## Bohn vs. Headley.—June, 1826.

A deed of gift of personal property from a father, (who was not indebted at the time,) to his child, executed, acknowledged and recorded, according to law, conveying the property to the child, with a provision that the donor was to remain in its possession and use during life—*Held*, to be valid both at common law and under the statute of 13 *Eliz.*

Such a deed is not within the statute of 27th *Eliz.* that statute not relating to conveyances of personal, but of real property.

H, being entitled by deed, at her father's death, to certain slaves, the father sold them as slaves for life to B, who took possession, and used them as his own—*Held*, in an action of trover, brought at the father's death by H, against B, for the slaves, that there must be other evidence of a conversion of the slaves by B, to entitle H to recover.

After the date of the said deed H, who was then a single woman, married. The donor, her father, died during her coverture, and afterwards her husband died, without doing any thing to recover the possession of the slaves—*Held*, that the right to them survived to the wife.

The issue of slaves born during the existence of a tenancy for life, belong to the tenant for life, per *Archer*, J.

APPEAL from *Baltimore* County Court. This was an action of trover for slaves. The defendant, (now appellant,) pleaded not guilty, and issue was joined.

1. At the trial the case was admitted to be this—One *Thomas Tucker*, of *Anne-Arundel county*, being the owner of, and having in his possession, the negroes in the following deed

mentioned, on the 7th of September 1796 executed the said deed, whereby he did give, grant, and make over unto his three daughters, *Mary Tudley Tucker, Rebecca Fairbain Tucker,* and *Harriet Tucker,* three negro slaves, as follows: Unto his daughter *M. T. Tucker* his negro boy *Ben,* unto his daughter *R. F. Tucker* his negro boy *Charles,* and unto his daughter *Harriet Tucker* his negro girl *Dorcas,* unto his said daughters, and their heirs forever; to have and receive the said negroes at his death, and not before, revoking all further claim unto the said negroes, further than to have the use and labour of them during his natural life. The deed was acknowledged on the day of its date before a justice of the peace of *Anne-Arundel* county, and recorded on the 8th of September 1796, among the records of that county, where *Tucker* then resided. Negro *Dorcas,* in the said deed mentioned, is the negro woman named in the declaration, and the other negroes mentioned in the declaration are the children of *Dorcas.* At the time of making the said bill of sale, *Dorcas* was an infant of the age of seven years, and *Harriet,* the plaintiff, a child of *Tucker,* was at that time an infant of the age of ten years. *Tucker* continued to keep and hold in his possession *Dorcas,* using and employing her as his property, according to the provisions of the deed, until he sold her as herein set forth. On the 18th of December 1810, *Tucker* brought *Dorcas* with the boy *George,* her child, then an infant, to *Baltimore,* and sold and delivered her by the name of *Darkee,* and also the said *George,* to the defendant, as slaves for life to him, for the consideration of $280 then paid to him by the defendant; and executed to him, in pursuance thereof, a bill of sale, which was acknowledged before a justice of the peace of *Baltimore* county on the day of its date, (the 18th of December 1810,) and recorded on the 9th of January 1811 among the records of that county. The defendant has ever since continued to hold *Dorcas* and *George* as his slaves, and had them in possession, together with the other negroes in the declaration mentioned, all of whom are the children of *Dorcas,* and who, together with *George,* were all born during the life of *Tucker,* and all, except *George,* since the said sale to the defendant. The plaintiff continued to live with her father, the said *Tucker,* until he removed from

this state into *Virginia* in the year 1814, where she married one *George Headley*. That *Tucker* died in December 1818, and *George Headley* in November 1819. The defendant then prayed the direction of the court to the jury, that the matters so admitted were evidence of fraud in the making the deed aforesaid from *Tucker* to the plaintiff; that the same deed was void, and that the plaintiff was not entitled to recover. This direction the Court, [*Archer*, Ch. J.] refused to give; but instructed the jury that the plaintiff was entitled to recover. The following is the opinion he delivered to the jury. The determination of the question as to the validity of the conveyance by *Thomas Tucker* to *Harriet Tucker*, dated the 7th of September 1796, depends upon the construction of the different statutes relative to fraudulent conveyances. The common law, it is apprehended, cannot reach this case, the gift to *Harriet* being precedent to the acquisition of any right by the defendant. *Bac. Ab.* 307. It has indeed, been said, that the rules of the common law are so strong against fraud that they would reach every case intended to be remedied by the statutes 13 and 27 *Eliz. Kadgoan vs. Kennett, Cowper*, 434. But this remark, it is apprehended, must be confined to those cases where the debt, or right intended to be avoided, had its inception before the commission of the fraudulent act by which it was intended to deceive the creditor, or defeat the pre-existing right. And indeed, independent of the circumstance of the right of the defendant having accrued long subsequent to the voluntary conveyance to the plaintiff, which could prevent it from being the subject of animadversion at common law, the conveyance appears not to be accompanied by any of those sure and certain *indicia* of fraud which would render it void. It does not appear, for example, that there has been a successive transfer of all the donor's property. There appears to have been no secrecy about the transaction; it has been executed and acknowledged and recorded in the usual manner. There seems to be no unusual clauses in it, which would constitute marks of fraud and collusion; no artful and forced dress and appearance given by the parties to the instrument, which would create a suspicion that they were intended to conceal some hidden and fraudulent intention. It is true the owner continued in possession after

the conveyance, but it was in virtue of a positive stipulation, inserted in the body of the instrument; and if there had been no such convention between the parties, the mere possession by the donor would have been justified since the passage of the act of 1763, the conveyance having been acknowledged and recorded.   If this instrument be void then against a subsequent purchaser or creditor, it must be in virtue of the statutes of *Elizabeth,* above referred to; for there seems to be no principle of common law which could contaminate it.   These statutes, being made for the purpose of avoiding fraudulent transfers of property, such a construction has ever been put upon them by courts of justice, as would most effectually carry into execution the intentions of the legislature in suppression of the frauds intended to be guarded against, under whatever plausible devices they might be covered.   They have, therefore, had a liberal construction in suppression of fraud; their spirit and purview have been largely considered, and such a construction has been given them as has made them highly beneficent to the community.

The statute 13th *Eliz.* extends to all creditors, and to all others who have any cause of action or suit, or any penalty or forfeiture, either to the state or the citizen, and renders invalid all *voluntary conveyances* against prior, as well as subsequent creditors, with the exception of family settlements and provisions; and even these are void if accompanied with the above mentioned particular *indicia* of fraud.   In the absence of these indications, they stand on the same ground with deeds made for a valuable consideration.   In cases of family settlements and provisions, conveyances have a preference over debts originating in subsequent contracts; because the consideration, upon which it is founded, proceeds from a most virtuous motive, and it would be inconsistent with every moral principle to give a different determination.   The defendant has been supposed, in argument, to stand in the light of a *purchaser*, and not of a *creditor*, and that therefore the stat. 13 *Eliz.* could by no probability reach this case, it applying exclusively to creditors. But in one view of the case he might possibly be considered a creditor, for if he paid for the property on a consideration which failed entirely, he might have his action against the vendor for

the sum paid. To make myself better understood, if the first conveyance overreached the subsequent sale, the consideration of the purchase had failed, and he would be a creditor subsequent to the voluntary conveyance, and, but for the consideration, might be considered within the reach of the statute. But if in this view of the case, the defendant can be considered as a creditor, his claim, originating subsequently to the voluntary conveyance, cannot overreach it, as it is founded on considerations of blood and natural affection. A man *not involved* in debt may legally make provision for his children.

In the case of *Ld. Townsend vs. Wyndham,* 2 *Ves.* 11, Lord *Hardwicke* is reported to have said, "that if there is a voluntary conveyance by one not indebted, if that voluntary conveyance was for a child, and no particular evidence or badge of fraud to deceive or defraud subsequent creditors, it appears, that it will be good, otherwise not; but it will stand, though afterwards he becomes indebted." It cannot be contended that any of the usual badges of fraud attended the original transaction, nor is there any evidence in the cause to induce the slightest belief that the original conveyance was made with the intent of contracting subsequent debts. The transfer cannot then be considered as coming within any of the provisions of 13th *Elizabeth.*

Let us next inquire whether, considering the defendant in the light of a purchaser, the conveyance to the plaintiff is embraced by any of the provisions of the 27th *Eliz. ch.* 4, against fraudulent conveyances? The object in the passage of this law was to protect purchasers from conveyances made with intent to defraud and deceive. Should this statute be considered as extending to conveyances of personal property, such has been the construction put upon it by repeated determinations of the courts, that it would seem to embrace the present case. Mr. *Roberts,* in his treatise on Fraudulent Conveyances, lays it down as a principle, that a subsequent purchaser may treat a prior voluntary conveyance as a nullity, although he *had notice* of the precedent conveyance. This principle may now, without any inquiry into the reasonableness of it, be considered undeniable, since the determination in the case of *Doe on the demise of Otley vs. Manning,* 9 *East,* 59. It has also been

determined, that a voluntary gift, if followed, though at a *long interval*, by an attempt to convey, furnished *presumptive evidence* of an original intent to defraud; and that when the two acts are coupled, to wit, the voluntary conveyance and subsequent sale to a purchaser, this constituted evidence of an *original fraudulent intent*, and made the first conveyance void under the statute. If the language of the statute would at all have justified its extension to conveyances of merely personal property, there appears to be no reason why the courts should hesitate to protect, by it, subsequent purchasers of this species of property; for conveyances of personal property, in fraud of purchasers, are as numerous as conveyances of lands and tenements; and when the general diffusion of this kind of property over the whole mass of the community is considered, the assertion may be safely ventured, that transfers of it are both more important and more numerous. Personal property, it is true, is of a fluctuating and transitory character, but still, with some exceptions, it is capable of being traced and identified. But however just and reasonable in principle its extension might be, courts cannot give an interpretation contradicting the intention of the legislature, as manifested by the language they have used. The words of the statute are *lands, tenements* and *hereditaments;* now it is scarcely necessary to say that personal property, at least so far as regards the object of the present suit, cannot be included within either of these terms, their known and received legal signification excluding the idea. Perhaps a reason may be discovered for the use of these terms, from the great care formerly bestowed in the ascertainment of the rights, of what was considered, lasting and permanent, and from the low estimation in which personal chattels were held, being regarded as only a transient commodity, which might be protected in the hands of purchasers by the aid of the common law, without the necessity of legislative provision. From a full consideration of the subject, I am satisfied that neither the common law, nor the statutes, can be so construed as to avoid the conveyance to the plaintiff.

A question has been raised, whether the plaintiff can sustain the present suit? By the statement agreed upon it appears, that the plaintiff in the year 1814 was married to *George*

*Headley*, and that he died in the year 1819, before the institution of this suit. There does not appear to be any thing in the objection. If the wife survive, any action for a tort committed to her or her personal or real property, before marriage, or to her person or real estate during coverture, will survive to her. 1 *Chitty's Pleading*, 64. If this cause of action originated previous to the marriage, she is certainly properly in court. But the conversion, which is the injury complained of, is alleged in the declaration to have taken place subsequently to the death of her husband; if this be the fact, there is also an end of the objection, provided, after the death of her husband, the property remained to her, as the right of action occurred only from the time of the wrongful conversion. Property in the plaintiff is necessary to support this action. The husband, during his life, never reduced the property in contest into possession. He never exercised any acts of ownership over it, by which his intention of making it his own was demonstrated. No property therefore *vested* in him. It was in fact a mere right of action, which he never deemed it necessary to enforce. After the coverture is determined by the death of the husband, the property and right of action certainly remains to the wife, and not to his representatives. The prayer is therefore overruled. The defendant excepted.

2. The defendant further prayed the court to instruct the jury, that the plaintiff was not entitled to recover in this action the children of *Dorcas*, born after the deed of gift, and during the life of *Tucker*, the grantor. And the Court, [*Archer*, Ch. J. and *Hanson*, A. J.] being of opinion that the children, born during the life of *Tucker*, belonged to him and his assignee, instructed the jury accordingly. The plaintiff excepted. Verdict and judgment for the plaintiff, and the defendant appealed to this court.

The cause was argued on the *first* bill of exceptions, before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, and DORSEY, J.

*Frick*, for the Appellant, contended, that the deed of gift from *Thomas Tucker* to the appellee, was *void*. 1. Under

·the statutes of 13th and 27th *Elizabeth.*   2.  At common law. If not, then 3.  That it was an instrument *voidable* on its face, and that *Tucker*, by his sale to the appellant, avoided it.   4. That at all events, the children of the negro woman in question, born during the lifetime of *Tucker*, were the property of the tenant for life.   5.  That the parties to the action are misconceived.

1.  The gift from *Tucker* to *Headley* is *void* by the statutes 13th and 27th *Elizabeth.*   The case is of small import as regards the amount, but in principle important to the commercial interest, and to confidence and integrity in dealing.   The question is simply, whether the *bona fide* purchaser of a chattel, which was previously the subject of a voluntary gift where the donor retained possession, is protected?   Lord *Mansfield* has said that the 13th *Eliz.* was made for the benefit of creditors, and the 27th *Eliz.* for protection of *purchasers.*   Now, the 13th *Eliz.* has relation to personal as well as real property; but, as it is said we are purchasers, we are excluded.   The 27th *Eliz.* it is said, protects purchasers, but those only of lands, tenements, and hereditaments.   These statutes, however, are always named and construed together.   No case where one is referred to without calling in aid of the other.   *Roberts' Fraud. Conv.* 395.   And here, although the distinction is taken, yet it is to show that all voluntary conveyances, though not void against creditors themselves, (without some distinct badge of fraud,) are always so against purchasers.   The st. 13th *Eliz.* is said by *English* judges to be declaratory of the common law.   Under this statute there is no doubt this gift was void as to *creditors* at the time and subsequent.   *Rob.* 15, 16, &c. and *Twyne's* case, 3 *Coke* 80.   Yet purchasers who, in the *general* construction of the statute are said to be more favoured, are excluded, because not expressly named in 13th *Eliz.*   But there is a phrase in 13th *Eliz.* which it may be assumed was not idly inserted, and means something—the word "others" after creditors.   It is *nomen generalissimum*; and it may be argued, that it includes purchasers; and any person who is aggrieved by gifts, conveyances, &c. which the statute denounces, may apply it to himself.   It is in fact so applied.   *Jackson vs. Myers,* 18 *Johns. Rep.* 425.   *Roberts,* 15, *(note d.) Tay*

*lor vs. Jones,* 2 *Atk.* 601. And whether at the time, or subsequent, does not alter the case. Again—Admit that a purchaser is excluded from 13th *Elizabeth,* and as to him the gift was good in its inception—What consideration then passed from *Tucker* to *Bohn?* None. Would not then *Bohn eo instanti* become a creditor, and his claim, by relation back, overreach the gift? For what is a subsequent purchaser but a creditor, if the consideration of his purchase fails.

2. But this gift is also void at common law. It was said, that the common law could not reach this case, because the gift was precedent to the debt or right. That was the notion in *Bacon's* time. But Lord *Mansfield* says, in *Kadogan vs. Kennett,* 2 *Cowp.* 434, "the principles and rules of the common law, as now universally known and understood, are so strong against fraud in every shape, that the law would have attained every end without the statute;" that is, the law is the same without the statutes. Then if the statute does not distinguish whether the right be precedent or not, neither does common law. It is not denied that the statute 27th *Elizabeth* would extend to purchasers subsequent. Where do we get this construction? In the statute itself. How is it extended to 13th *Eliz.* where no such words subsequent, &c. are mentioned? From analogous construction, and under the principles of the common law, which are so abhorrent of fraud, that they allow the principles of the one statute to be applied in the construction of the other. It is the common law that permits this construction. And will it be said that the common law furnishes one set of rules to try fraud under the statute, and another to try the same fraud at common law? There is no such doctrine. *See the Newgate case,* 3 *Bac. Ab.* 247, and *Jackson vs. Myers,* 18 *Johns.* 425, *(note a.)* We may then premise, that if purchasers are excluded from the benefit of 13th *Eliz.* yet the rules of construction, with regard to conveyances, gifts, &c. therein named, are *general rules.* There presumption of fraud was always derived from an attempt to sell or convey to a purchaser, even after a long interval. *Roberts* 33, 34, &c. This is said to be a gift. Now gifts are not in favour with the *English* law—nor with our own. And a true and proper gift at common law must always be accompanied with

possession, otherwise the donor may retract it. *Spratley vs. Wilson,* 3 *Serg. &. Lowb.* 8. *Jenk.* 109. 2 *Blak. Com.* 441; and *Pearson vs. Pearson,* 7 *Johns. Rep.* 26. A gift is not consummate until delivery, and until then the party may revoke it. A true and proper gift must take effect immediately; otherwise it is no gift, but a contract. In *Twyne's* case, one badge of fraud assigned was, that the donor continued in possession, and by reason thereof, traded and trafficked with others, and deceived them. And in *Edwards vs. Harben,* 2 *T. R.* 587, it was established as a general rule, that unless possession *accompanies and follows the deed,* it is fraudulent and void. These are undeniably principles of the common law. They are the tests which the common law applies in order to try the intent under the statutes, for the statutes say nothing of badges of fraud. They speak of the intent, which is to be argued from the principles of the common law. Recollect also, that in gifts under the statute, the possession passed, and even *such* voluntary gifts the statute avoided—because the *English* law knows but one species of gift, i. e. attended with possession. Does the act of 1763, *ch.* 13, alter the case here. That act justified the donor's possession, which at common law was always a badge of fraud; it did nothing more. It barely removed the presumption of fraud arising from possession. *Garrett vs. Hughlett,* 1 *Harr. & Johns.* 3 & 4. But it did not negative other *indicia* of fraud—as want of consideration, or for affection and blood, or to a son a cousin, relation, &c. *Comyn's Dig.* tit. *Covin,* (B 2.) And here there is no consideration for the deed. The act does not say *all* gifts shall be good, but in the general phraseology of all similar acts. (See 1729, *ch.* 8, *s.* 5.) *No gift* shall *be good without,* &c. It was only intended to take off the presumption of fraud from the possession; but if there be fraud otherwise, acknowledgment and record is no protection. Again, the gifts to which the act relates are common and ordinary gifts, where the donor remains in possession, yet the other requisites of a gift are complied with, (a symbolical delivery, &c.) such as *pass* property. Certainly not conditional gifts or prospective, with express reservation of its future operation, and on its face revocable and avoidable,

3. The gift in this case was revocable on its face; and by the subsequent sale of the negroes by *Tucker* to *Bohn*, he *Tucker,* (as he had a right to do so,) did revoke it. At common law, as before remarked, if a gift was not accompanied with delivery and possession, it was properly a contract. Here there was no such delivery, and the gift was only prospective and conditional, The very terms used are the terms of a will, and as such it may fairly be assimilated to a legacy, or *donatio causa mortis*; and in either case is revocable. *Roberts' Fraud. Conv.* 442. *Spratley vs. Wilson,* 3 *Serg. & Lowb.* 8, *(note.)* "To have and receive at my decease, and not before," is the phrase. Now, can it be urged that any property *passed,* (as is the phrase of the act of 1763,) at the time of the gift, when it thus is expressly negatived; and when he died there was none in him to pass. It is not thus within the acts of 1763, for that certainly *does* not refer to gifts *in futuro,* and this is no other; no property having passed, and none could pass *in præsenti* from the words used. It cannot be considered a gift under that act; it is not necessarily so because acknowledged and recorded; for usually the acknowledgment refers to the act of assembly in such cases made and provided. Here *Tucker* says it is his act, according to the true intent and meaning thereof. He best knew his own meaning; he gave his own construction when he sold to *Bohn,* and revoked the gift; and for his own honour and memory it is just so to consider it. Beside, *Harriet Tucker* still lived with her father when he brought the negroes to *Bohn,* and made sale of them. It was an act of which she must be supposed to have had knowledge and privity, and both may be considered parties to the sale.

4. As to the issue of *Darkee,* born during the lifetime of *Tucker,* they belong to tenant for life, or his assignee, and cannot be claimed in this action. *Standiford vs. Amos,* 1 *Harr. & Johns.* 526.

5. The parties to this action are misconceived. *Harriet Tucker* having married in the lifetime of her father, the gift enured to *Headley,* the husband, at the father's death, and his representatives as such are the proper plaintiffs. If property be acquired to the wife after marriage, such property belongs absolutely to the husband; so that if husband dies before it is

reduced to possession or is paid, or is due, it would go to his executors, and not to the wife. *Reeves Dom. Relations,* tit. *Baron & Feme, chap,* 4. 3 *Amer. Dig.* 328, pl. 185, cites *Walker vs. Mebane,* 1 *Murph. N. C. Rep.* 41. A distributive share of personal property accruing to a *feme* during marriage, vests in husband, and in case of death goes to his representatives, and not to the wife. *Griswold vs. Penniman,* 2 *Conn. Rep.* 564, cited in 4 *Amer. Dig.* 309, pl. 61.

*Mitchell,* on the same side. There is no proof from which the jury could infer an actual or constructive conversion. To show that it was incumbent on the plaintiff to prove a demand and refusal, he cited 6 *Bac. Ab.* tit. *Trover,* 678, 682, 706. 2 *Phill. Evid.* 118, 119, *(note.)* *Brown vs. Cook,* 9 *Johns. Rep.* 361. *Sturtevant vs. Ballard, Ibid* 341. And to show that a will was revoked by a subsequent sale, he cited *Nan Mickel's* case, 14 *Johns. Rep.* 324. 2 *Pow. on Mortg.* 1109, *(note;)* and *Bayard vs. Hoffman,* 4 *Johns. Chan. Rep.* 450.

*Hanan,* for the Appellee. The gift is not void at common law. 3 *Bac. Ab.* tit. *Fraud,* 7. There is nothing on the face of the deed to show that a fraud was intended; the donor's remaining in possession is stipulated in the deed. *Kadogan vs. Kennett,* 2 *Cowp.* 436. It is a good deed under the act of 1763, *ch.* 13, *s.* 2. And independent of that act it is valid. It is not void under the statute of 13th *Elizabeth.* That statute extends to creditors only. *Kadogan vs. Kennett,* 2 *Cowp.* 434. The statute of 27th *Elizabeth* relates to purchasers of lands, and not of personal property. Was the appellant a creditor? If he was, he was a subsequent creditor. A man not in debt may make a voluntary gift to his children. *Lord Townshend vs. Wyndham,* 2 *V. s.* 11. *Verplank vs. Sterry,* 12 *Johns. Rep.* 557. *Bennett vs. Bedford,* 11 *Mass. Rep.* 390, 421. *Parker vs. Procter,* 9 *Mass. Rep.* 390. *Walker vs. Burrows,* 1 *Atk.* 94. *Middlecome vs. Marlow,* 2 *Atk.* 520. *Rob. on Fraud. Convey.* 452. The deed is good under the statute of 27th *Elizabeth. Rob. on Fraud. Conv. y* 7. But it ha-- been s id that the action is misconceived. Th appellee m rried, and her husba d died after her father. By th deed she wa no- to h ve the p operty until after her father's death. This is a *chose in action,* over

which the husband exercised no control. It survived to the wife. *Roper on Baron & Feme. Schuyler vs. Hoyle,* 5 *Johns. Chan. Rep.* 209. *Wright vs. Rutter,* 2 *Ves. jr.* 675. *Carr vs. Taylor,* 10 *Ves.* 578; and *Wildman vs. Wildman,* 9 *Ves.* 174.

*R. Johnson,* also for the Appellee. It has been contended, that it did not appear that there was a demand and refusal. Demand and refusal are only evidence of conversion; other evidence may be admitted of that fact, than that of demand and refusal. The appellant holds and uses the property as his own, which is sufficient evidence of conversion. It has also been contended, that the action is improperly brought, admitting the deed to pass the negro in question to the appellee. In 1814 the negro woman was the right of the appellee, acquired by her previous to her marriage. During her coverture the possession was out of her. The right to sue for the negro accrued during the coverture; but the right to the negro accrued before. Suppose a bond is given to the wife while she is a *feme sole,* on the death of her husband it survives to her, if not reduced into possession by the husband. 1 *Chitty's Plead.* 17, 21. Her right was a legal one before her marriage, but not a right in possession. 2 *Blk. Com.* 433, 434. *The State vs. Krebs,* 6 *Harr. & Johns.* 31. 3 *Bac. Ab.* tit. *Executors, &c.* (H 4,) 65.

The deed was not void at common law. It is a conveyance to a child in the absence of any debts due by the father at the time. The property remaining in the donor's possession was not evidence of fraud, because the deed provided that he should have the use and possession during his life. The deed is not void under the statute of 13th *Elizabeth,* even if the appellant be considered as a creditor. He is, if at all, a subsequent creditor. A deed is never set aside where there is a settlement on the family of the donor, who is not in debt at the time of the settlement. In *Jackson vs. Myers,* 18 *Johns. Rep.* 425, the suit was depending when the deed was made. But can the appellant be esteemed a creditor? He is not a creditor now, being in possession of the negroes. But he is said to be a creditor, because the sale to him is void. This judgment must be affirmed, before he can be considered a creditor. If the

judgment is reversed, he would not be one.    As a creditor he has no right to hold the property.    The statute 13th *Elizabeth* never meant to place a creditor in a better situation than he was in before the deed.    *Dorsey vs. Smithson,* 6 *Harr. & Johns.* 64.    One creditor has no right to hold the property of the debtor.    It is a fraud upon the other creditors to do so.    The deed cannot be affected by the statute 27th *Elizabeth,* which relates to real estate only, and  was intended to be coextensive with the statute 13th *Elizabeth.*

It has also been insisted that the deed is not a valid deed under the acts of 1763, *ch.* 13, and 1729, *ch.* 8.    If the deed comes within the provisions of the act of 1763, then it is a valid one; or if not under that act, it is a good deed at common law.    But the deed is within the letter and spirit of the act of 1763.    That act intended to provide for all cases where the possession of the property remained in the donor, by the deed's being acknowledged and recorded.    It was intended to remedy a defect in the act of 1729.    It is also a good deed within the act of 1729, and good against the executors, &c. of *Tucker.*

The deed, it has been said, is to be considered a donation in last sickness.    But such a donation must be  on the death-bed of the donor, and possession of the  property must be delivered; if the donor recovers, the gift is void, and the property reverts to him.    But here there was a delivery of the  deed, and the record of it is evidence of its delivery; which shows the donor intended it to have effect, and not to be revocable.

*Mitchell,* in reply, insisted that it was incumbent on the plaintiff to prove a demand and conversion.    This was a conveyance of a present interest, and  passed by delivery of the deed, subject to the use of the father for life.    When the appellee married, she  resided with her father, and it was a conjoint possession of the slave by her and  her father.    Being in her possession when she married, the slave vested *eo instanti* in the husband.    How was he to reduce the slave into possession; living in the same house, he obtained the possession which his wife had.    A note given to a *feme sole,* on her marriage vests in the husband.    *Combs vs. Williams,* 15 *Mass. Rep.* 243.  Where the interest vests during the coverture, the husband

must sue alone. *Reeve's Dom. Rel. ch.* 4. There is no case at law where the husband has not a right to a legacy left to his wife. *Buckley vs. Collier,* 1 *Salk.* 114. 1 *Selw. N. P.* 246, 269. 3 *Selw. N. P.* 1159. *Ankerstein vs. Clarke,* 4 *T. R.* 617. No person could bring an action for the slave, as it was a gift *in presenti,* or a gift postponed until the death of the donor. If the first, then the slave must have been delivered to the appellee. A symbolical delivery will not do, it must be an actual delivery—an actual transmutation of possession. If the deed was not valid at common law, it was not under the act of assembly. 2 *Pow. on Mortg.* 1026, 1027. 1 *Pow. on Mortg.* 31, 32. If possession was delivered at the time of the gift, the interest vested in the husband; but if not delivered then, the gift was revocable by *Tucker.* A deed, purporting to be a deed of manumission, may be considered as a will. *Nan Mickell's* case, 14 *Johns. Rep.* 324. Supposing it to be a gift, it was a voluntary one, and void at common law, and under the statutes 13th and 27th *Elizabeth.* A voluntary conveyance, without consideration, is a fraud. Subsequent and prior creditors are placed precisely on the same footing. *Bayard vs. Hoffman,* 4 *Johns. Ch. Rep.* 450.

DORSEY, J. delivered the opinion of the Court. The only question brought before the court below in this case, connected with this appeal, was, whether the voluntary deed of gift of *Thomas Tucker* to the appellee, was void by the statutes 13th and 27th of *Elizabeth,* against fraudulent conveyances? We think the court decided correctly on the point submitted for their determination, according to the testimony in the cause. The deed of gift was duly executed, acknowledged and recorded, in 1796, and fourteen years afterwards the donor sold the negro, given by said deed, to the appellant. It is not shown that in 1796, or between that time and the year 1810, *Thomas Tucker* owed one cent to any human being. Upon what principle then can it be contended that his deed of gift was void under the 13th of *Elizabeth?* It is not a conveyance of lands, tenements or hereditaments, and therefore not a case embraced by the provisions of the statute of 27th of *Elizabeth.* But the court below, presuming from the manner in which the pray-

er was made to them, that their establishing the validity of this deed removed all impediments to the appellee's right of recovery, instructed the jury that he was entitled to recover.  A new objection hath been raised to this instruction, to which the attention of the county court does not appear to have been called, viz. that there was no evidence offered to the jury from which they could find either an actual or an implied conversion. This the court think is a fatal objection to the opinion given by the court below, and to the recovery which has been had thereon, they therefore reverse their judgment.

JUDGMENT REVERSED,

And a *procedendo*, on motion of the Appellee's Counsel, was *refused*.