# JAMES A. STEWART, Adm'r of SARAH SEWARD, vs. ROBERT SPEDDEN.

In an action of trover, a witness was asked if he ever heard the title of the plaintiff's intestate disputed? HELD, that such general hearsay testimony was properly rejected.

A prayer, "that there has been no evidence offered to sustain the issues on the part of the plaintiff, and that therefore the jury must find for the defendant," is not too general under the act of 1825, ch. 117.

Where, in an action of trover by an administrator, the plaintiff offers no evidence tending to prove property in his intestate at the time of her death, nor of demand and refusal when there was an absence of facts amounting to a conversion, the court may instruct the jury that there is no evidence to sustain the issues on the part of the plaintiff.

55    v.5

Stewart, Adm'r of Seward, *vs.* Spedden.

Where a party fails in proving any one essential fact necessary to sustain his case, there is a total failure of evidence, though he may have offered sufficient proof on all other material points.

The fact that the mother of the negroes in dispute belonged to plaintiff's intestate, does not prove that her children belonged to the same party at the time of such intestate's death, or at any other time.

Where a question is asked a witness, having no apparent connection with the subject matter of the suit, and there is no statement of the purpose for which the testimony is proposed, or its connection with other facts to be proved, it is properly rejected.

Where a witness has stated facts which induced in his mind the impression, that the party about whose capacity he was called to testify was foolish and simple, he may give his opinion as to the capacity of such party to transact business or make contracts.

Privies in representation may show the insanity of their testator or intestate, in an action at law to recover property alleged to have been conveyed by such testator or intestate.

The fact that a witness was distributee of his father's estate, who died a lunatic, and that a suit was pending by the plaintiff against his father's trustee, involving the same title as that in which the witness was called to testify, does not disqualify him as a witness.

The possession of a receipt conveying a negro by the defendant claiming under the party in whose favor it was executed, is *prima facie* evidence of its delivery.

Where a witness was a distributee of his father's estate, which would be liable under an implied warranty of title if the plaintiff recovered, and was also a distributee of the estate of the plaintiff's intestate, his interest is balanced and he is competent.

Delivery of a receipt conveying a negro is essential to the operation of the instrument, and is a question to be submitted to the jury.

A prayer which is good in part and bad in part is properly rejected.

The execution and delivery of a paper conveying a negro is sufficient to pass the title without immediate possession following.

The operation of the statute of limitations is not suspended by the death of a party against whom it has commenced to run in his lifetime.

Demand and refusal are necessary to show a conversion, where the defendant is in possession, by finding or by delivery from the plaintiff or a third person.

Where the defendant purchased the property from a party to whom the plaintiff's intestate conveyed it, his possession commenced and continued under contract, and he cannot be held liable in *trover* without a previous demand and refusal.

Though the ruling of the court below be reversed upon an appeal by the plaintiff, yet if it is apparent to this court that he cannot recover upon a second trial, a *procedendo* will not be ordered.

APPEAL from the Circuit Court of Dorchester county.

*Trover* by the appellant against the appellee, to recover the value of negro slave Rose and her two children, alleged to belong to the estate of Sarah Seward, deceased. The pleadings are the same as those in the case of *Stewart vs. Redditt,* 3 *Md. Rep.,* 67. In the course of the trial eleven exceptions were taken by the plaintiff.

*1st Exception.* The plaintiff proved by a competent witness that he knew the negroes in dispute; that they were in possession of the defendant, and are the descendants of Phillis; and that Phillis belonged to Sarah Seward; and their value. The plaintiff then asked the witness if he ever heard Sarah Seward's title disputed? To this question the defendant objected, which objection the court (SPENCE, J.,) sustained, and the plaintiff excepted.

*2nd Exception.* This exception is substantially the same as the second exception in the case of *Stewart vs. Redditt,* 3 *Md. Rep.,* 70, the only difference being that the witness, Spedden, now stated he was eight or nine years old when the facts about which he testified occured.

*3rd Exception.* In this, the court, at the instance of the defendant, instructed the jury, "that there has been no evidence offered to sustain the issues on the part of the plaintiff, and therefore they must find for the defendant."

*4th Exception.* This is sufficiently stated in the opinion of this court.

*5th Exception.* In this, the court refused to allow a witness to give his opinion of the mental capacity of Sarah Seward, the witness having stated that he had known her from infancy; had seen her at various places and times; lived within a mile and-a-half of the place where she resided; had spoken to her and she to him, but never had any conversation with her on any subject; had seen and observed her deportment often; she was afflicted with the palsy; had spoken to her whenever he had seen her, but never had any conversation with her from which he could form an opinion of her capacity; she never conversed much with any one to his knowledge; never saw her do any sort of work, and never knew her to take any account of her servants.

*6th Exception.* The court refused to allow the question to be asked of the witness, Hubbard, as to his opinion of the capacity of Sarah Seward to transact business or make a contract, the witness having stated that he boarded some five months at Mr. Marshall's, where she lived; had frequently seen her; she was dressed common and had sorry shoes; never knew her to talk much; never conversed with her or heard her converse; she did not sit at the table with the family; never saw her do any work; she sat about and walked about; shuffled in walking and was always shaking her head and all her body; never heard Mr. Marshall or any member of the family speak to her; she sometimes went to church and was then better dressed, but her clothes were common; had observed her about the house and thought her appearance was simple and foolish.

*7th Exception.* The court in this exception overruled an objection to the competency of John Marshall, a witness offered by the defendant. It was admitted that witness was a son of Elijah Marshall, who shortly before his death sold one of the negroes in controversy to defendant, and, after this sale, was found a lunatic and had a trustee appointed; that there is a suit pending between the plaintiff and said trustee in regard to sundry negroes claimed by the former; that Elijah Marshall died intestate, leaving assets, in which witness is entitled to a distributive share as his son; that witness' mother, who died intestate, was the sister of Sarah Seward, and that said Sarah left no children. The witness had been sworn on his *voir dire,* and stated that he had no interest in the event of this suit.

*8th Exception.* The defendant offered a receipt, dated the 17th of June 1820, by which Sarah Seward acknowledges she had received of Elijah Marshall $20, in full, for a negro child named Rose, (one of the negroes in dispute,) and by the same instrument conveyed said negro to said Marshall. One of the witnesses to this receipt was a justice of the peace, who proved that Sarah Seward came to his house to execute it, and did so by making her mark to it, which witness saw done, after which she took the same away with her. The plaintiff objected to its being read as evidence, but the court overruled the objection.

*9th Exception.* In this exception the court overruled an objection to the competency of Wright, a witness offered by the defendant. It was admitted that witness was the trustee in lunacy of Elijah Marshall; that defendant claims title under a purchase from Marshall; and that witness married a daughter of said Marshall, and that the mother of his wife was a sister of Sarah Seward and had died intestate, as stated in the seventh exception. This witness had also been sworn on his *voir dire,* and stated that he had no interest in the event of this suit.

*10th Exception.* Various witnesses were then offered on the part of the defendant, and testified as to the mental capacity of Sarah Seward; that the negro Rose and other servants, the children of Phillis, were at Elijah Marshall's, and that he always claimed Rose and exercised acts of ownership over her until he sold her to defendant, after Sarah Seward's death. It was admitted that defendant claims and holds possession of the property in dispute as his own. The plaintiff then asked instructions to the jury in substance as follows, all which the court rejected:

1st. That upon the whole testimony offered by the defendant, the receipt mentioned in the eighth exception is not evidence of title in the defendant to the property therein mentioned.

2nd. That this receipt is not to be regarded by the jury as establishing a title to the property therein mentioned in the defendant, or in Elijah Marshall, unless they find that it was delivered by Sarah Seward to Elijah Marshall.

3rd. That to give this receipt the legal effect to pass title to the grantee, the jury must be satisfied of its delivery, and that the possession of the property immediately followed to the grantee therein, and though they may find its execution and delivery, and that Marshall took immediate possession of the property, still no title passed thereby, if they believe Sarah Seward at the time was incapable of making a valid contract.

5th. That to give said paper force and effect to pass title to the property, the jury must be satisfied that it was delivered by Sarah Seward, or by some one for her, to Elijah Marshall, or some one for him.

6th. This prayer is the same as the *first.*

8th. That this paper is not evidence of title in the defendant, its delivery by Sarah Seward to Elijah Marshall not having been proved.

9th. That the act of limitations will not run whilst there are no letters of administration granted upon an intestate's estate ———— a party to claim property, and that it would not run against the heirs at law of Sarah Seward in regard to property belonging to her at her death, until letters of administration were granted on her estate.

12th. If the jury find that Sarah Seward was the owner of Phillis, the mother of Rose, and was *during* her whole lifetime incapable of executing a valid deed or contract, and that defendant had possession of Rose and her two children at the institution of this suit, claiming title to her, and that Sarah Seward died intestate, and letters of administration on her estate were granted to the plaintiff, then they are bound to find a verdict for the plaintiff.

13th. If they find that Sarah Seward was the owner of Phillis, and that Rose and her two children are the descendants of Phillis, and that Sarah Seward died intestate, and letters of administration on her estate have been granted to the plaintiff, and that Elijah Marshall in his lifetime sold Rose as his property to defendant, and that the latter took possession, and claimed her and her two children as his property, and that three years have not elapsed from the granting of said letters, and that Sarah Seward during her whole lifetime was incapable of executing a valid deed or contract, then the jury are bound to find for the plaintiff.

14th. If the jury find that Sarah Seward was in her lifetime the owner of Phillis, and that the slaves in controversy are the descendants of Phillis, and that defendant, since the death of said Sarah, and before the institution of this suit, has taken possession of said slaves and claims them as his own, then such claim and exercise of ownership over them is such a conversion as to authorize the jury to find a conversion, unless they believe such claim and exercise of ownership was by the authority of said Sarah or the plaintiff.

21st. That in order to find a conversion of the negroes in controversy, it is not necessary that the jury shall believe from the evidence that there was a demand made by the plaintiff and a refusal to deliver by the defendant.

*11th Exception.* In this exception the court decided that the jury should not be allowed to take with them to their room the prayers which had been granted by the court, but allowed them to take the receipt referred to in the eighth exception.

The verdict and judgment was in favor of the defendant, and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and TUCK, J.

*Elias Griswold* for the appellant, made and argued the following points:

1st. In connection with general proof of title to the ancestor of a slave, it is competent to prove negatively such title had never been questioned, therefore it is proper to ask a witness, "If he ever heard Sarah Seward's title disputed?" 1 *Greenlf. on Ev.,* sec. 101.

2nd. That the witnesses, Spedden and Hubbard, stated facts and circumstances in regard to the plaintiff's intestate, within their knowledge, sufficient to permit their opinion of her mental capacity to make contracts to go to the jury, together with the facts and circumstances on which it was founded. 7 *Gill,* 10, *Townshend vs. Townshend.* Persons *non compos* are incapable of making contracts, and their acts are void *ab initio. Story on Sales,* sec. 13. *Chitty on Cont.,* 229, 256. But even if this be not so and their acts be *voidable* only, they still may be attached *at law* by privies in representation. 25 *Law Lib.,* 28, 29. 2 *Law Lib.,* 263, 1 *Md. Rep.,* 32, *Key vs. Davis.*

3rd. That the plaintiff having proved property in his intestate and its value, and that the defendant had possession of the same, the court below erred in ruling "that there had

been no evidence offered to sustain the issues on the part of the plaintiff, and therefore the jury must find for the defendant." Besides this prayer is too general under the act of 1825, ch. 117.

4th. That in an issue involving the mental capacity of a party to make contracts, and it having been proved that the party took no account of her property and did not manage it, it is competent to show, in order to establish incapacity, that it was managed by others. 25 *Law Lib.*, 71.

5th. That in an action of *trover*, a witness produced by the defendant, through whose father the defendant derives title, and the father is dead intestate, leaving assets, in which the witness is entitled to a distributive share, and the plaintiff's intestate is an aunt of the witness and is dead, leaving no children, such witness is necessarily interested in the event of the suit and incompetent.

6th. That in an action of *trover*, the evidence of a witness who testifies that he was a justice of the peace, and saw the plaintiff's intestate sign a receipt for the property by making her mark, is not sufficient to warrant the court in suffering the receipt to be read to the jury as evidence of title in the defendant. 11 *Alabama*, 974, *Gamble vs. Gamble.*

7th. That in an action of *trover*, a witness produced by the defendant, through whose wife's father defendant derives title to the property, and the father-in-law is dead intestate, and the witness was the committee of the father-in-law, as a lunatic, in his lifetime, and administered on his estate after his death; and the witness' wife is a niece of the plaintiff's intestate, who left no children at her death, such witness is necessarily interested in the event of the suit and incompetent.

8th. That proof of signing a receipt for personal property before two witnesses, one a justice of the peace, the grantee not being present, or any agent for him at the time, and it being expressly proved that the grantor retained the paper, and no evidence that the paper was ever delivered by the grantor to the grantee, or that the property was ever delivered, is not sufficient to warrant a jury to regard the receipt

Stewart, Adm'r of Seward, *vs.* Spedden.

as evidence of title to said property in the grantee therein named, and, therefore, the court erred in rejecting prayers 2, 5 and 8. 1 *Dev. & Batt.*, 64, *Elliott vs. Elliott.*

9th. That limitations will not run against the heirs at law of a person dying intestate, in regard to property taken after death, belonging to the intestate at death, whilst there are no letters of administration upon the estate of the deceased enabling a party to claim property. And that it would not run against the heirs at law in such case, when the intestate, during life, was incapable, from mental imbecility, from making valid contracts in favor of a person who had taken and sold intestate's property as his own. The court therefore erred in rejecting prayers 9 and 13. 7 *H. & J.*, 17, *Haslett vs. Glenn.*

10th. In an action of *trover*, where property is proved to be in the plaintiff, and it is proved and admitted that the defendant sets up an adverse claim, and holds possession and exercises ownership over the property under such claim, it is not necessary to prove a demand and refusal to warrant the jury in finding a conversion. 2 *Greenlf. on Ev.*, sec. 642. 1 *Dev.*, 306, *Carroway vs. Burbank.* 7 *Johns.*, 257, *Bristol vs. Burt.* Conversion is exclusively a question for the jury. 9 *Bac. Abr.*, 636. 2 *Mod.*, 244, *Mires vs. Solebay.* *Ev. Pr.*, 301. Therefore, the court erred in rejecting prayers 14 and 21.

11th. That the court erred in rejecting prayers 3 and 12, because if the jury believed the facts stated in them, the plaintiff would be entitled to a verdict.

12th. That where prayers or instructions are granted by a court to the jury in regard to a paper writing in evidence before the jury, it is error in the court to refuse to let the jury take the prayers or instructions with them to their room, and allow them to take the paper writing.

*James Wallace* for the appellee made and argued the following points:

1st. The question propounded by plaintiff in first bill of ex-

ceptions was properly ruled out, because it was indefinite and irrelevant. It was not proper to attempt to prove title negatively.

2nd. The court properly refused to suffer Spedden, North and Hubbard, as stated in second, fifth and sixth bill of exceptions, to give their opinions of capacity, because their knowledge of Sarah Seward was too slight to enable them to form an intelligent opinion. 3 *Md. Rep.*, 79, *Stewart vs. Redditt*.

3rd. In the third bill of exceptions the position of the court was correct, because there had been no evidence offered by the plaintiff to sustain the issue on his part, and it was their duty so to instruct the jury when applied to.

4th. The court properly ruled out the question propounded to North, in the fourth bill of exceptions, because it was irrelevant.

5th. The testimony of Wright and Marshall, objected to in the seventh and ninth bills of exception, was properly admitted, because their interest, if any, was too remote, uncertain and contingent to affect their admissibility. Their interest might have affected their credibility, but not their competency. Their interest was equipoised. 1 *Greenlf. on Ev.*, secs. 390, 420.

6th. The court properly admitted the receipt contained in the eighth bill of exceptions to be read to the jury, because the execution had been proven by one of the attesting witnesses, and was found in the possession of the defendant, who was entitled to the custody. 3 *Md. Rep.*, 79, *Stewart vs. Redditt*.

7th. The court properly rejected the prayers 1, 2, 3, 5, 6 and 8; No. 8, because the paper therein recited was evidence of title, the same having been executed by Sarah Seward, acknowledged by her and found in the custody of the person claiming property under it. And the property conveyed by it in the possession of the defendant. Proof of delivery is not essential. Possession of the paper is evidence of its delivery to the original grantee until the contrary is shown.

8th. The court did not err in rejecting the ninth prayer, because it was a mere abstract proposition of law, not sustained by the facts of the case. It was in evidence that the adverse holding and claim commenced in the lifetime of Sarah Seward. Limitations commenced to run then, and was not

interruped by the death of Sarah Seward. The prayer, without embracing all the facts, was calculated to mislead the jury. 9 *Gill*, 156, *Clements vs. Smith.* 4 *Gill*, 406, *Stockton vs. Frey.*

9th. The twelfth and thirteenth prayers were properly rejected; they assume a fact that was not proved, to wit, that Sarah Seward was, during her whole lifetime, incapable of executing a valid contract, and thus the jury were required, if they believed that fact, to find a verdict for plaintiff. It was calculated to mislead the jury. 9 *Gill*, 156. 4 *Gill*, 406. The proposition was erroneous, because there was no evidence of demand, refusal or conversion, without which the jury could not find a verdict for plaintiff.

10th. The fourteenth and twenty-first prayers were properly rejected, because, in such a case as this, proof of demand and refusal was necessary before the jury could find a conversion or a verdict for plaintiff; because:—1st. Executed contracts of persons *non compos mentis* are now placed on the same footing as those of infants, not void *ab initio*, but only voidable. 1 *Md. Rep.*, 32, *Key vs. Davis.* 2 *Greenleaf, sec.* 369. 11 *Pick.*, 305, 306, *Seaver vs. Phelps.* 2nd. Demand and refusal are not necessary where the taking was tortious, but otherwise where property is held under a contract simply voidable. 16 *Com.*, 83, *Thompson vs. Rose.* 3rd. A court of equity will not interfere to avoid a contract with one *non compos mentis* after the lapse of ten or twelve years, where the parties cannot be put in the same situation. 9 *Ves.*, 478, *Niell vs. Morley.*

11th. There was no error in the refusal to permit the jury to take the prayers granted with them to their rooms, because it was a matter of practice in the discretion of the court. The prayers were not instructions, but the basis on which they were given. The instructions were given orally and the prayers could have done no good, but might have misled. It does not appear on the record what the prayers referred to were, and this court cannot decide whether the appellant has been injured by the refusal of the court below or not; and if the decision of the lower court be wrong, cannot, on that ground, reverse the

judgment and award a *procedendo.*  9 *Gill,* 56, *Ramsey vs. Glass.*

Tuck, J., delivered the opinion of this court.

This is an action of *trover* instituted by the appellant against the appellee to recover the value of certain negroes, as the estate of Sarah Seward.   At the trial the plaintiff proposed to ask a witness, "if he had ever heard the title of Sarah Seward disputed," which question being objected to by the defendant, was disallowed by the court.   The correctness of this ruling is presented by the first exception.   We can have no doubt that such general hearsay testimony was properly rejected, according to the most familiar rules of evidence.

The facts stated in the *second* exception, on which the plaintiff sought to obtain the opinion of the witness as to the mental capacity of Sarah Seward, are not materially different from those detailed in the case of *Stewart vs. Reddit,* 3 *Md. Rep.,* 67.   For the reasons there assigned this exception must be affirmed.

The *third* exception presents the question, whether the evidence offered by the plaintiff was legally sufficient to warrant the jury in finding a verdict for him?   The objection to this prayer, that it is too general, under the act of 1825, ch. 117, cannot be sustained.   If the prayer had asserted that the evidence offered was not legally sufficient, or that there was no evidence, sufficient in point of law to maintain the issues joined on the part of the plaintiff, it would have been sufficiently specific in view of that act.   According to the case of *Cole vs. Hebb,* 7 *Gill & Johns.,* 20, where a party fails in proving any one essential fact, as for example the delivery as well as the sale of goods, there is a total failure of evidence, although he may have offered sufficient proof on all other material points.   And in *Farmers Bank vs. Duvall,* 7 *G. & J.,* 83, 95, it was held, that, where the jury are left to wild speculation and conjecture in drawing conclusions from the evidence before them, the court may on application inform them, that "there is no evidence, or no evidence sufficient in point

of law, to establish the fact sought to be proved." In the present case it was necessary for the plaintiff to show that the negroes mentioned in the pleadings, were the property of his intestate at the time of her death. But he offered no evidence tending to prove that fact. The witness said that he knew them, that they are descendants of Phillis, and that Phillis belonged to Sarah Seward, but it does not thence follow, that the children of Phillis belonged to her at the time of her death, or at any other time. *Callis vs. Tolson*, 6 *Gill & Johns.*, 92. Again, at the stage of the trial at which this prayer was offered, there was nothing to show how the defendant had obtained possession of the negroes in dispute. In the absence of facts amounting to a conversion of the property to his own use, it was necessary to have proved a demand and refusal, yet no such evidence was offered. The court then were right in saying to the jury, that there was no evidence offered to sustain the issues on the part of the plaintiff.

It appears by the *fourth* exception that a negro named Charles had belonged to Sarah Seward, and a witness was asked, whether he had hired Charles and from whom? to which the defendant objected. We cannot perceive what relevancy this inquiry had with the case. This negro does not appear to have been one of those mentioned in the pleadings. Sometimes interrogatories are propounded, having no apparent connection with the subject matter of the suit, which, however, may be received on a statement of the purpose for which the testimony is proposed, and in connection with other facts to be proved. But the present exception does not present any such case. The counsel for the appellant supposed an aspect of the case in which this inquiry might become pertinent, if answered in a particular way. For aught that appears it might have been answered differently. We must decide the case as presented by the record, and not upon hypotheses stated here, which might not have been verified at the trial below.

The question propounded in the *fifth* exception, was clearly

inadmissible for the reasons stated in 3 *Md. Rep.*, 67. The additional facts mentioned by the witness did not materially improve the plaintiff's case, on the question of mental capacity. Besides the witness himself stated that he never had had any conversations with the party, from which he could form any opinion on that subject.

We think the court erred in not admitting the interrogatory to Hubbard, offered in the *sixth* exception. He had given evidence of facts which had induced in his mind the impression, that Sarah Seward was foolish and simple. And upon which he may have formed an opinion as to her capacity to transact business, or make contracts. The case made by this prayer is stronger than the proof offered in the second and fifth exceptions on this subject. We are not to say what value the jury were to have put upon the opinion of the witness formed from the facts proved. The evidence offered was within the principle recognized in the case of *Townshend's Will*, 7 *Gill*, 10.

As to the admissibility of evidence on the question of insanity in cases like the present, we need only say that it was competent, according to *Key vs. Davis* 1 *Md. Rep.*, 32, where it was held that privies in representation may show the infirmity of the testator or intestate, on the authority of *Beverly's Case*, 4 *Coke*, 124.

We do not discover that John Marshall, offered by the defendant, in the *seventh* exception, had any disqualifying interest in the event of the suit. His connection with the estate of his father as a distributee, may have given him an interest in the question before the court, inasmuch as a suit was pending against his father's trustee, in which other negroes were in controversy, but such an interest does not disqualify a witness, even if the fact of the pendency of the same title in that action appeared. And as to his interest as one of the distributees of Sarah Seward, he was called to testify by a party claiming against his right as such distributee, and his testimony would have been against his interest, being offered in support of the defendant's title.

We are at a loss to imagine any reason for objecting to the receipt offered by the defendant in the *eighth* exception. To be sure, as the case then stood, there was no necessity for any proof on his part; but if he chose to offer evidence of his title, there was no reason for excluding this paper. It was said in argument, that there was no evidence of the delivery of the paper. This we think is sufficiently answered by the fact of possession by the defendant, claiming under the party in whose favor it was executed. 3 *Md. Rep.*, 67.

The objection to the evidence of James Wright, offered in the *ninth* exception, may be disposed of as was that to the competency of Marshall in the *seventh;* with the additional remark, applicable to both, that the supposed liability of Elijah Marshall's estate to the defendant, for the value of the negro, under an implied warranty of title, in case the plaintiff recovered, did not give the witness a greater interest in defeating the action, as far as we can perceive, than his interest in Sarah Seward's estate, in case the plaintiff recovered; and his interest being at least balanced he was competent.

After the above nine bills of exceptions had been reserved by the plaintiff below, a number of witnesses were examined and admissions introduced, upon which the plaintiff offered a variety of prayers, which we will dispose of in their order.

1 and 6. We concur with the court in their refusal to grant these prayers. Why was not the receipt to be regarded by the jury as affording evidence of title to the negro? The defendant claimed under Marshall, who, it was shown by the receipt, had bought the girl from Sarah Seward. The fact that no witness proved that he saw the delivery, can make no difference in this case. It was executed by the plaintiff's intestate, and possession of it by the defendant claiming under Marshall, was at least *prima facie* evidence of delivery, as we have said under the *eighth* exception.

2 and 5. These prayers should have been granted. The receipt was not "to be regarded as establishing a title to the property," unless it was delivered to Marshall, because de-

livery is essential to the operation of such an instrument, and the question should have been submitted to the jury.

3. This prayer was properly rejected because it was good in part and bad in part. *Budd vs. Brooke*, 3 *Gill*, 198. We have said that the execution and delivery of the paper were evidence of title; but this prayer requires the jury also to find that the possession of the negro immediately followed, which was not necessary, if the jury were satisfied of the execution and delivery of the paper. *Franklin vs. Long*, 7 *Gill & Johns.*, 407. The prayer would have been right, in so far as it relates to the mental capacity of Sarah Seward, at the time of the execution and delivery to Marshall, if it had not been connected with what we have said, was unnecessary to be found by the jury.

8. This prayer was correctly refused, because it assumes that the paper had not been delivered to *Elijah Marshall*, when there was evidence tending to prove that fact.

9. This prayer relates to the plea of limitations. From a defect in the record we cannot plainly discover the point decided by the court. If it was designed to raise the proposition, that the statute does not run whilst there are no letters of administration on a deceased's estate, without reference to the time of the accrual of the cause of action, it was clearly wrong, because the operation of the statute cannot be suspended by the death of a party, against whom it has started in his lifetime.

12, 13, 14. These prayers do not require the jury, to find that Rose belonged to Sarah Seward. If she never had any title the plaintiff could not recover, no matter what other facts they might have found from the evidence. There was evidence in the *tenth* exception that she had owned Rose, in her lifetime, but these prayers do not submit the finding of that fact to the jury. The 12 and 13, are also defective in overlooking the question of conversion, which is essential in this form of action, and on which we will express our views in considering the 14th and 21st prayers.

14, 21. The first of these asserts that certain facts therein

Stewart, Adm'r of Seward, vs. Spedden.

mentioned amount to a conversion by the defendant; the last of them affirms that a demand and refusal are not necessary, as evidence of conversion. We are not to say whether, supposing Sarah Seward to have been *non compos mentis*, Marshall's acts in reference to this property amounted to a conversion; but we are called upon to determine whether the defendant, claiming and holding by a purchase and delivery from Marshall, can be held liable in *trover*, without a previous demand and refusal by him to surrender the property. As this action equally lies where the taking has been tortious, or where the defendant has lawfully obtained possession of the plaintiff's goods, and afterwards converted them, the mode in which he acquired possession is material, in determining what evidence is necessary to prove the conversion. It is well settled, that demand and refusal are not necessary in all cases, but this mode of showing the conversion cannot be dispensed with, where the party is in possession by finding, or by delivery from the plaintiff or a third person. 2 *Philips Ev.*, and 1 *Chitty's Pl.*, *Title Trover*. *Bull. N. P.*, 44. 2 *Esp. N. P.*, 590, *margin*. 2 *Saund. Pl. & Ev.*, 881. 2 *Saund. Rep.*, 47, *(c.,) Wilbraham vs. Snow*. 2 *Greenl. Ev.*, 642, 644. *Brown on Actions at Law*, 440. In the case of *Severin vs. Keppell*, 4 *Esp. Rep.*, 156, Lord Ellenborough held, that what begins in contract is not to be considered as of itself amounting to a tortious conversion. And the Court of Appeals in *Bohn vs. Headley*, 7 *H. & J.*, 257, reversed the judgment below, and refused a procedendo, where the defendant was in possession of the property, claiming under a deed from a party who had conveyed an absolute title, when he had only an estate for life. The suit was brought by the person entitled, after the death of the party under whom the defendant claimed. There was no proof of demand and refusal, and the court held this defect to be fatal. We cannot distinguish the cases. In principle they are the same. The evidence here shows that the defendant purchased the property from Marshall, and that his possession commenced, and has continued under contract. We approve of the court's refusal to grant these prayers.

57.     v.5

We concur with the court below as to the *first, second, third, fourth, fifth, seventh, eighth* and *ninth* exceptions, also as to the *first, third, sixth, eighth, ninth, twelfth, thirteenth, fourteenth* and *twenty-first* prayers, in the *tenth* exception. Upon the *sixth* exception, and the *second* and *fifth* prayers in the *tenth* exception, the judgment must be reversed, but a procedendo will not be granted. 7 *H. & J.*, 257. *Mudd vs. Harper,* 1 *Md. Rep.*, 110. As this disposes of the case on the merits presented at the trial, it is deemed unnecessary to express any opinion on the points of practice raised by the *eleventh* exception.

*Judgment reversed with costs and procedendo refused.*