WILLIAM W. WALKER vs. L. MILFORD SCHINDEL.

*Admissibility of Parol evidence to prove a Distinct collateral fact not Inconsistent with the Written agreement—Trade fixtures—Parol agreement—Conversion—Severance and asportation—Trover—Measure of damages.*

Where a written agreement of partnership entered into for the purpose of carrying on the business of distilling whiskey, provided that the stills, boilers, fermenting and mash tubs should be furnished by S. one of the partners, for the use of the firm, but was silent with regard to the ownership of said property, parol evidence is admissible to show that the property so furnished by S. was to be, and remain his separate individual property.

By a written agreement of partnership entered into for the purpose of carrying on the business of a distillery, it was provided that S. one of the partners should furnish certain articles needful to the prosecution of the business; among which were the mash tub and three fermenting tanks; these were constructed within the building, and were too large to be removed from it in their entirety, and with other articles furnished by S. constituted a complete apparatus essential to the business of distilling. There was an express parol agreement between the partners that these articles or fixtures should remain the property of S. HELD:

1st. That the parol agreement was valid, and the articles in question must be treated as personalty, and their wrongful conversion by W. the purchaser of the premises, would entitle S. to maintain an action of trover.

2nd. That actual severance and asportation were not necessary to constitute a conversion.

3rd. That in an action of trover by S. to recover damages for the illegal conversion of said articles, the only measure of damages to which he would be entitled would be the value of the articles when severed and removed, and at the time of their conversion.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

Walker *vs.* Schindel.

*Exception.*—The plaintiff offered a prayer which is contained in the opinion of the Court. The defendant asked the following instructions to the jury:

1. That according to the construction of the articles of agreement of copartnership read in evidence, the plaintiff became obligated to furnish for the firm or copartnership, the capital necessary to furnish the building (where the business was conducted) with all the necessary machinery and appliances essential for that purpose; and if the jury find from the evidence, that the articles sued for in this case, were essential for the purpose of distilling, and that the plaintiff did furnish the capital for the purchase of them, in pursuance of the said articles of agreement, and in fulfilment of his understanding as mentioned therein, then the said property or articles thereby became the property of the copartnership. And if the jury further find that the plaintiff and his father agreed between themselves, that the said property should be the property of the plaintiff, notwithstanding the said agreement, nevertheless the plaintiff is not entitled to maintain this action, if the jury find that there was no change in the possession of the property, and that it remained thereafter in the same plight and condition as before, and that the plaintiff did not charge himself with the same on the books of the firm; and also, that the assets of the partnership have (exclusive of the articles sued for here,) been reduced to money, and the same was insufficient for the payment of partnership debts, and only reached to pay fifty cents in the dollar.

2. If the defendant purchased the building in which the articles sued for in this case were at the time of the purchase, from one Hammerslay, and Hammerslay purchased it for the purpose of converting it into a distillery to carry on there the business of a distillery, and with that view entered into the agreement of copartnership read to the jury, and pursuant to the said agreement the

said Hammerslay and the plaintiff entered into the business of distilling, and the articles sued for were accordingly placed therein, and used as the apparatus for distilling; and further find that one of these, the mash tub, was and is yet fastened in the floor of the third story of said building, and that it, together with the three square fermenting tanks, were, and are too large to be removed whole from the building, and that they were built or made on the inside of the building and cannot be taken out without being knocked to pieces, and that they were not built or made so as to be taken apart and carried out of the building, and that these last mentioned articles and the others mentioned in the declaration in this case, are all connected together, one with the other, and so constitute a complete apparatus essential to the business of distilling, and that the said building in which they were placed, was and is still arranged and devoted to the purpose of distilling; and further find, that whilst the building and apparatus were in the same plight as when the said parties were carrying on the business of distilling there, the defendant purchased the building and grounds as appurtenant and adjacent thereto, for the purpose of carrying on the business of distilling, and that the plaintiff knew he was so purchasing it, then the plaintiff cannot recover in this action, notwithstanding the jury may believe from the evidence that the defendant knew before or at the time of his purchase, that the plaintiff claimed the said articles as his property.

3. If the jury find that one Hammerslay purchased the building in which the articles sued for in this case were placed, for the purpose of converting it into a distillery and carrying on that business therein, (as a partner with the plaintiff,) and that afterwards, in pursuance of this design on his part, he entered into articles of copartnership with the plaintiff, in the business of distilling to be conducted in the said building; and that the said build-

Walker *vs.* Schindel.

ing was accordingly adjusted and adapted to that purpose, and the articles sued for in this case, pursuant to the agreement of copartnership aforesaid, were placed in the said building, and the business of distilling was carried on therein by the plaintiff, and the said Hammerslay. And further find that some one, or more of said articles, was, or were fastened to, or in the flooring of the said building, and that certain other of the said articles, to wit : the wooden beer well, the three square tanks, the mash tub, were built up through the floor, and put together on the inside of the said building, and are, or were too large to be taken out without being knocked to pieces, and that they were not put together, or built so as to be capable of being knocked to pieces, but for the purpose of remaining in the building. And further find, that each and all of these articles sued for, are connected together, one with the other, so as to constitute one complete apparatus, essential to the business of distilling, and that they were and are still used for that purpose. And further find, that afterwards, the said copartnership between the plaintiff and defendant was dissolved, but the said articles remained in the said building, placed and connected together as distilling apparatus from the time of the dissolution, up to the time hereinafter mentioned, when the defendant purchased the building. And also further find, that the defendant about the 7th of January, 1879, after the dissolution, purchased the said building for the purpose of conducting and carrying on there, the business of distilling, and that it was known to the plaintiff, and to the said Hammerslay, that the defendant did purchase with that view. And further find, that at the time of the said purchase, the said building, and the said apparatus were in the same plight as when the business of distilling was carried on by the plaintiff and Hammerslay, and that the said articles were essential to the operation and business of distilling, then the plaintiff is not entitled to re-

cover, notwithstanding the fact, that he claimed the said articles to be his, and the defendent knew of his said claim.

The Court (MOTTER, J.,) granted the prayer of the plaintiff and refused those of the defendant; the defendant excepted, and the verdict and judgment being against him he appealed.

The cause was argued before BARTOL, C. J., STONE, GRASON, MILLER, IRVING, and RITCHIE, J., for the appellee, and submitted for the appellant.

*A. K. Syester*, for the appellant.

*H. H. Keedy*, for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

This is an action of *trover* brought by the appellee against the appellant, to recover damages for the illegal conversion by the latter of certain trade fixtures in a distillery, which are described in the declaration.

The evidence clearly shows, and it has not been denied by the appellant, that the fixtures in question were purchased by the appellee, and put into the building by him as his property, under a contract with George E. Hammerslay, the owner of the building, with whom he had formed a copartnership for the purpose of carrying on the distillery; by which contract it was expressly stipulated that the fixtures in question were to be and remain the separate and individual property of the appellee. Nor is it denied that these facts were known to Ranncy W. Hunter, the mortgagee of Hammerslay, at the time he accepted the mortgage, and also to the appellant when he purchased the mortgaged property, and accepted the deed from Hammerslay of his interest therein. These admissions by the appellant dispense with the necessity

of considering several of the appellant's exceptions to the testimony offered by the appellee, for the purpose of proving the facts above enumerated.

The prayer of the appellee granted by the Circuit Court, which has been omitted from the record, has been supplied by agreement, and is as follows;

"The plaintiff prays the Court to instruct the jury, that if they find from the evidence, that the plaintiff and Hammerslay entered into copartnership, for the purpose of distilling whiskey, and that the plaintiff purchased with his own funds, the distilling apparatus sued for in this case, and that both before, and at the time they entered into said copartnership they agreed amongst themselves that the said distilling apparatus, thus furnished and paid for by the plaintiff, should remain and be his separate and individual property, and that it was so understood and recognized by them, after they had formed the said copartnership; and further find that R. W. Hunter, both before, and at the time he took the mortgage read in evidence, from Hammerslay, was informed, and knew that the plaintiff had purchased the said *apparatus*, and that the same was his individual property; and further find that the defendant, before he purchased the said mortgaged property, and also before the said sale was finally ratified, and before he received the deed from Hammerslay which was read in evidence, was informed and knew that the said apparatus was the property of the plaintiff; and further find that the plaintiff made a demand of the defendant for the said *apparatus*, and the defendant refused to let the plaintiff have the same, but used it, and claimed it as his own property, then the plaintiff is entitled to recover, and the measure of damage is the value of the articles constituting the said *apparatus* set forth in the declaration, as found from the evidence."

The testimony shows that the building in which the fixtures were placed, was originally a mill for grinding

grain, and that certain alterations were made in its interior, for the purpose of adapting it to the business of a distillery. The *Mash-tub* and *three Fermenting tanks* were constructed within the building, and were too large to be removed from it in their entirety. The former was placed in the third story, and set into the floor, down upon the joists, so as to make it steady, the floor having been cut away for that purpose; the mash contained therein, was stirred by a rake fastened to the roof or ceiling. The *three fermenting tanks* were placed on trestle work, or horses, on the second floor and passed up through the third floor through apertures cut therein, extending —— feet above the level of the third floor. All the articles mentioned in the declaration are essential to the business of distilling, and are connected with one another by means of pipes and troughs, so as to constitute one complete *apparatus* for distilling.

At the trial below the appellant offered three prayers, which were refused, and he now assigns for error the granting of the appellee's prayer, the rejection of the three prayers offered by himself, and he also claims a reversal of the judgment for an alleged error in overruling his objection to certain evidence offered by the appellee.

The appellant's prayers will first be considered.

'1st. His first prayer is based upon the construction of the agreement or articles of copartnership, under which, the prayer asserts, that the chattels or fixtures in question became partnership property. The agreement stipulates that Schindel, the appellee, contracted to "furnish the *stills*, boilers, fermenting and *mash-tubs*, and the grain and other necessary appliances in the mill connected with the business, and the hogs in the pen," and Hammerslay agreed "to furnish the mill with the requisite machinery for grinding the grain and other work."

This agreement according to its true construction does not import either that the mill and machinery furnished by Hammerslay for the use of the partnership, or the distilling *apparatus* furnished by the appellee for the same purpose became partnership property. The parol evidence shows, as we have said, that the *apparatus* furnished by the appellee was to be and remain his separate, individual property.

There can be no doubt that the parol testimony offered to prove that agreement was admissible under the decisions of *McCreery, vs. McCreery,* 5 *G. & J.,* 221; *Bladen vs. Wells,* 30 *Md.,* 583; *Creamer vs. Stephenson,* 15 *Md.,* 221, and *Basshor vs. Forbes,* 36 *Md.,* 154. Other cases might be cited in support of the proposition "that proof of any collateral parol agreement, or independent fact, which does not interfere with the terms of the written contract, though it may relate to the same subject-matter is admissible." In this case the written agreement provides that the property in question shall be furnished by the appellee for the use of the firm; but is silent with regard to the ownership or right of property therein. The parol evidence on this subject does not contradict the writing, but merely proves a distinct collateral fact not inconsistent with the writing. There was no error in rejecting the appellant's *first prayer.*

2nd. The *second prayer* of the appellant asserts that notwithstanding the parol agreement to the contrary, the distilling *apparatus* in question became and was a part of the freehold, by reason of the manner in which certain parts of it were annexed to the building, and because the *mash-tub* and *three fermenting tanks* had been constructed within the mill, and were too large to be removed from it in their entirety, and because these articles and the others mentioned in the declaration, were connected together and constituted a complete *apparatus* essential to the business of distilling, and because the appellant purchased

the mortgaged property for the purpose of carrying on a distillery therein, and this fact was known to the appellee, therefore the plaintiff was not entitled to recover. The last mentioned fact, that the appellant purchased the mill property with the intention of carrying on a distillery therein is wholly immaterial, and in no manner affects the appellee's rights. The point of the prayer appears to be that under the facts therein enumerated, the distilling *apparatus* became a part of the realty, notwithstanding, the parol agreement between the parties. The prayer was properly rejected.

It is well settled that the rule of the common law by which, "whatever is affixed, or annexed to the soil or freehold becomes a part of it, and cannot be removed except by him who is entitled to the inheritance," may be modified or changed .by the agreement of the parties express or implied. And where, as in this case, there was an express agreement that the articles, or fixtures, so annexed should remain the property of the party by whom they were purchased and placed in the building, there can be no doubt or question that the agreement is valid, and that the articles will be treated as personalty. Many cases might be cited in support of this proposition. We refer only to *Curtis vs. Riddle,* 7 *Allen,* 185; *Taft vs. Stetson,* 117 *Mass.,* 117; *Sheldon vs. Edwards,* 35 *N. Y. R.,* 279; *Tifft vs. Horton,* 53 *N. Y. R.,* 377, and *The N. C. Railroad Co. vs. The Canton Co.,* 30 *Md.,* 347, and cases there cited.

In *Tyler on Fixtures,* the author after citing many cases in which the above doctrine has .been maintained, and stating as a rule that "the general law governing fixtures may be changed by the express agreement of the parties," adds, "It is true that agreements cannot in all cases control; like other general rules this has its exceptions. The limitation to the rule is when the subject or mode of annexation is such as that the attributes of per-

sonal property cannot be predicated of the thing in contro-
versy, as when the property cannot be removed without
practically destroying it, or when it, or part of it is essen-
tial to the support of that to which it is attached. With
this exception, chattels may be affixed to the realty, and
yet by the arrangement of the parties, may continue to
retain the character of personalty." *Tyler on Fixtures*,
146. In *Ford vs. Cobb*, 20 *N. Y.*, 344, the limitation
upon the effect of such agreements imposed by the nature
of the subject, and the mode of annexation is well expressed
by Judge DENIO in a well considered opinion.

The passage from *Tyler* above cited, was referred to by
the appellant in his brief, and he insists that the present
case falls within the exception stated by the author.
But the *second* prayer does not state as part of its hypo-
thesis, that the *apparatus* now in question, was so affixed
to the building as to be necessary to its support, or that it
could not be removed without injury to the building, or
without being itself practically destroyed. Nor is there
any evidence in the case to support such an hypothesis.

That some of the articles in dispute could not be re-
moved from the building, without being taken to pieces,
does not affect the question of ownership, although that
fact would necessarily have its influence in determining
the measure of damages.

By the agreement of the parties, all the articles named
in the declaration, remained personal property of the
appellee, and the wrongful conversion thereof by the
appellant to his own use, entitled the former to maintain
the action of trover. For that purpose an actual sever-
ance was not required. *Ewell on Fixtures*, 436, and cases
there cited. As there stated correctly by the author,
"the thing in question being already personal property,
actual severance and asportation are unnecessary in order
to constitute a conversion, and the question as to whether
or not there has been a conversion of the thing in contro-

versy; is to be determined by the general rules of law applicable to that question."

3rd. The *third prayer* of the appellant was similar to the *second*, and for the same reasons was also properly refused.

4th. The question of evidence presented by the appellant's exceptions, arose upon his motion to strike out the testimony of the witness Hammerslay. In the argument of this exception, the appellant's counsel contends that the testimony with respect to the fraud alleged to have been committed by the appellant and Hunter, in obtaining the deed from the witness, was irrelevant, and that it was error for the Circuit Court to refuse to strike it out. The deed spoken of is not in the record. The motion to strike out Hammerslay's testimony, appears in two bills of exception; these are not numbered, and with respect to them, and several of the other bills of exception, it may be remarked that they are set out in a most confused and bungling way, so that it is very difficult, if not impossible, to understand the points or questions intended to be reserved.

It does not appear that the motion to strike out the testimony was confined or limited to that portion relating to the procurement of the deed from Hammerslay. The whole testimony of the witness was objected to, and taken subject to exception; a part of it related to the notice given by the witness to the appellant, that the personal property now sued for belonged to the appellee.

This portion of the testimony was clearly admissible, and as the motion to strike out, comprehended the whole testimony of the witness, it was not error to refuse the motion.

5th. We have next to consider the prayer of the appellee which was granted, and which, the appellant contends, was erroneous in fixing the measure of damages to be "*the value of the articles constituting the said appa-*

*ratus* as found from the evidence." Under this instruction, as we construe it, the jury were told to estimate the damages according to the value of the property as it existed in the building, constituting a complete *apparatus*. But the proof showed that some of the articles, owing to their size, and the manner in which they were constructed and placed in the building, could not be removed without being taken to pieces; and the several articles constituting the apparatus, would have to be taken apart. The whole had been placed in the building by the voluntary act of the appellee, and though they remained his property, it is clear that he could not have the right to possess them, except in the condition they would be in when severed. If he had instituted replevin to recover them, or if the appellant had permitted him to take them, he could possess them only as they would be when severed and removed from the building. It follows that the only measure of damages to which he is entitled, is the value of the articles when so severed, and the jury ought to have been so instructed. We refer to *Ewell on Fixtures*, 441, and the cases there cited.

The appellee's prayer was also erroneous in failing to state that the measure of damages was the value of the articles *at the time of the conversion.*

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 11th July, 1882.)