CLINE *v.* FOUNTAIN ROCK LIME AND BRICK COMPANY, INC.

[No. 261, September Term, 1957.]

*Decided July 1, 1958.*

*Motion for rehearing filed July 22, 1958, denied July 25, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Charles McC. Mathias, Jr.,* with whom were *Mathias & Mathias* on the brief, for the appellant.

*Edward D. Storm* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal in a replevin action is from a judgment *n. o. v.* for the defendant, appellee, "for the return of the property replevied, the restoration of the scales in their original location upon the premises, and the restoration of the premises to their condition before this action was instituted, or in the alternative that judgment be entered for the defendant, Fountain Rock Lime and Brick Company, Inc., against the plaintiff, Earl H. Cline, for the sum of Four Thousand Five Hundred Fourteen Dollars ($4,514.00) and costs." The action was instituted August 21, 1956, to recover a set of platform weighing scales in the possession of the defendant.

The scales were replevied by the sheriff, August 31, 1956. The defendant filed five pleas, denying the wrongful taking, claiming a right to possession, alleging that the property replevied was real estate, limitations, and a counterclaim based on the common counts and for damages in the sum of $5,000. The case was tried April 2, 1957, before the court without a jury, and resulted in a judgment for the plaintiff for the goods replevied, one cent damages, and costs. The defendant filed a motion for judgment *n. o. v.* which was granted on the ground of limitations.

Litigation between these parties has been before this Court in two previous appeals. In *Cline v. Fountain Rock Co.,*

210 Md. 78, the appellee had recovered a judgment for $7,000, in an action based on an alleged oral lease to a road contractor of a limestone quarry, plant and equipment in 1949. The judgment was reversed and a new trial awarded, chiefly on the grounds that there was error in granting a damage prayer for a share in the profits of a certain stone contract, based on an alleged oral joint adventure agreement, and in admitting evidence not within the scope of the bill of particulars. In a second trial, the plaintiff amended its declaration to set up an additional claim, for a share in the profits of the stone contract performed by Cline on the theory of joint adventure, and recovered a judgment for $9,125. On appeal, we held that the new claim was barred by limitations. *Cline v. Fountain Rock Co.*, 214 Md. 251. The jury found against the plaintiff on the theory of lease, and there was no cross-appeal.

The quarry had originally been operated for the production of lime, rather than stone, and was virtually shut down at the time of the negotiations. The plant was not equipped with the heavy machinery, trucks and other equipment suitable for the production and delivery of crushed stone for roads. Whatever the exact terms of the alleged joint adventure, it is stipulated that the scales in question were purchased by Cline in 1950 at a price of $1,422.90, and installed at the quarry with the consent of Quynn, the manager and sole stockholder of Fountain Rock. A dwelling house, previously used to house one of the quarry employees, was moved from its foundations and converted into a scale house. The scales were installed in a concrete pit approximately 5 feet deep and connected with the interior of the house. Quynn supplied some of the labor for the installation.

Quynn testified that there was a profit-sharing arrangement at the time the scales were installed, and that Cline "was to contribute machinery and I was to contribute the plant." When the parties fell out in 1951, because Cline refused to sign a written lease Quynn had prepared, "everything dissolved". Quynn testified that he "presumed" each party would "get back what he put in". After the falling out, he did not ask Cline to remove the scales, nor does it

appear that Quynn made any subsequent use of the scales. Cline obtained stone to carry out his contracts from other sources. There was never any specific agreement as to what would happen "after the partnership ended". Quynn filed suit in 1951 in Frederick County to recover under the terms of the unexecuted lease, but no question was raised in that proceeding as to the ownership or disposition of the scales. The case was removed to Carroll County for trial.

In the instant case, Quynn contends that title to the scales passed to Fountain Rock when they were affixed to the real estate. But their removability, as between the parties, depends upon the intention of the parties. *N. C. Railway Co. v. Canton Co.,* 30 Md. 347, 354. Cf. *Dairy Co. v. Wrecking Co.,* 146 Md. 318, 321, and *Walker v. Schindel,* 58 Md. 360, 368. There was evidence to support the finding of the trial court that, as between the parties, the scales retained their character of personal property, and that title did not pass to Fountain Rock by the annexation. We find nothing inconsistent with this finding in the case of *Fortescue v. Bowler,* 38 A. 445 (N. J. Ch.), relied on by the appellee.

In September, 1954, Cline learned that Quynn had offered to sell the scales to a third person, and filed a suit in equity for an injunction in Frederick County, but after a preliminary hearing, no injunction was issued. Instead, a petition was filed in the Carroll County action, and an injunction was there issued to prevent Quynn from disposing of the scales. Although all other matters appear to have been fully litigated in Carroll County, the question of ownership of the scales was not determined. Counsel for the plaintiff in the instant case discussed with counsel for the defendant methods of procedure to dispose of that question, and states it was agreed that it would be simpler to dispose of the question in a replevin action. Counsel for the defendant admits the conversation, but denies that he waived any defenses that he might otherwise have. In any event, the equity suit in Frederick County was dismissed, and the present action instituted. We agree with the trial court that the pendency of the injunction in the Carroll County case did not operate as a stay of any proceedings that Cline might bring to de-

termine the question of ownership, and did not suspend the running of the Statute of Limitations. See *Ellicott v. U. S. Ins. Co.,* 7 Gill 307, 319; 34 *Am. Jur.* 206, and 53 *C. J. S.* 966.

The trial court held that because the business relationship between the parties ceased in 1951, and the action for replevin was not instituted until 1956, the action is barred by limitations. The appellant contends that since the scales were on the premises by agreement of the parties, and Quynn never requested their removal, limitations did not begin to run until the defendant attempted to sell the scales in 1954. The trial court relied strongly upon the case of *Ratrie v. Sanders,* 2 Harris & J. 327, but we think the case is distinguishable. There, a slave owned by the plaintiff had been loaned to another person, who sold her to the defendant. It was held that limitations ran from the time of the sale, rather than from the time the plaintiff learned of the sale, which was shortly before the action was instituted, but more than three years from the date of sale. In *Callis v. Tolson's Ex'rs.,* 6 Gill & J. 80, it was held that limitations did not run, as to property loaned, at least until an adversary claim was asserted by the person in possession. Cf. *Fishwick v. Sewell,* 4 Harris & J. 393.

"Replevin is an action *ex delicto* founded upon a tortious detention of chattels, for which damages may be allowed." *Fernandez v. Fernandez,* 214 Md. 519, 521. It would seem to follow that detention which is permissive in its inception cannot become tortious until there is some assertion of an adversary right. Thus, it is generally held that limitations does not begin to run in favor of a bailee until there is a demand and refusal, or until the bailee denies the bailment and converts the property to his own use. *Reizenstein v. Marquardt,* 39 N. W. 506 (Ia.); *Edgar v. Parsell,* 151 N. W. 714 (Mich.); *Lowney v. Knott,* 120 A. 2d 552 (R. I.); Note, 57 A. L. R. 2d 1044. Since we conclude that limitations did not begin to run until 1954, the present action is not barred. In view of our decision on this point, it is unnecessary to consider whether there was any waiver of the statute by counsel, prior to the dismissal of the equity case.

We think this holding also disposes of the contention based upon the counterclaim for "damages to the defendant's real estate caused when the plaintiff took possession of the replevied property". If Cline had a right to repossess the scales, damages could not be predicated merely upon the institution of the action. It is not contended that the sheriff used improper or excessive means in executing the writ, nor is the counterclaim based on that theory. In discussing the counterclaim the trial court said: "There was no evidence offered as to any duty on the part of any of the parties upon the termination of their joint venture to restore the premises to their original condition nor to take any action except that each was to have back his own property. Under these circumstances it seems clear to the Court that in the absence of any special agreement as to the obligation of the parties upon the termination of the joint venture that there was no duty or obligation on the part of the plaintiff when he took back the scales which belonged to him to restore the premises to their original condition. The defendant contends that it was the duty of the plaintiff upon his removal of the scales to restore the scales house to its original location as a dwelling. This dwelling was moved to its present location, largely at the expense of the plaintiff and for the benefit of the joint venture. There being no testimony as to any obligation on the part of the plaintiff to relocate this dwelling on the termination of the joint venture, the defendant obviously is not entitled to require the plaintiff to answer to it in damages because the plaintiff failed to restore the dwelling to its original site." We agree. Cf. *Potomac Edison Co. v. Routzahn,* 192 Md. 449, 459. If we assume, without deciding, that the counterclaim was properly pleaded under Rule 314 a of the Maryland Rules, there is no factual basis to support it. The judgment for $4,514, entered as an alternative to the return of the property replevied, and the restoration of the scales and premises to their condition before the institution of the replevin action, cannot survive a reversal of the first part of the judgment appealed from. It is unnecessary to discuss the appellant's contention that the court erred in fixing the amount of the alternative judgment. The

original judgment of the trial court, entered prior to the granting of the judgment *n. o. v.,* should be reinstated.

> *Judgment reversed, and case remanded for the entry of a judgment in accordance with the views expressed herein, costs to be paid by the appellee.*