## DURST *v.* DURST

[No. 180, September Term, 1960.]

*Decided April 17, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, MARBURY and SYBERT, JJ.

*John M. Robb* for the appellant.

*William H. Geppert* and *Hugh A. McMullen,* with whom were *Gunter & Geppert* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

Appellee, Sylvan C. Durst, brought this action of detinue against his former wife, the appellant, Flossie L. Durst, to recover possession of a policy of insurance on his life, which the wife held. The husband took out the policy in 1933. It named appellant, then still his wife, as the principal beneficiary, and their three children then living as contingent beneficiaries. On August 15, 1952, Mrs. Durst obtained a divorce from her husband. A property settlement agreement was entered into at that time whereby for a certain cash sum the husband was to have the real estate and personalty "of every kind and description", except for a few specified items. However, there was no mention made of the insurance policy. The decree of divorce stated that all property rights had been settled, and a subsequent letter from counsel for the husband to counsel for the wife which stated that "we brought

our figure up to $5,450.00 with the understanding that all claims of every kind were settled", was introduced into evidence.

Mr. Durst stated that in August, 1953, he first discovered that the policy was missing from a jointly held safety deposit box and that, believing it was lost, he filed a lost policy claim with the insurance company. When an insurance agent attempted to have the ex-wife make an affidavit in respect to the "lost" policy, she refused and revealed she held possession of it. According to Mr. Durst's testimony, he allowed her to retain possession after being assured by a legal advisor that it would not be necessary to sue for it and that it was his policy. He also testified that he has continued to pay premiums on the policy up to the present. In 1959, desiring to change the named beneficiary, Mr. Durst caused his counsel to make formal demand on the ex-wife for the return of the policy, which she refused. This suit resulted.

The case was heard on the merits and after appellant's motions for a directed verdict were denied, the jury returned a verdict for the appellee. Appellant's motion for judgment N.O.V. was also refused and judgment was entered in favor of appellee for possession of the policy, whereupon Mrs. Durst brought this appeal. She had raised several defenses below, including a plea of limitations. In this Court she cites the refusal of her motions as error and relies solely upon the ground that this suit was barred by the statute of limitations.

Code (1957), Art. 57, § 1, provides: "All actions of * * * detinue or replevin * * * shall be commenced, sued or issued within three years from the time the cause of action accrued; * * *".

The common-law action of detinue lies for the recovery of personal chattels unjustly detained by one who acquired possession of them either lawfully or unlawfully, or the value of them if they cannot be regained in specie. It is based on right of possession in the plaintiff. 1 Poe, *Pleading and Practice,* 5th ed., § 153; 1 MLE, *Actions,* § 53. In order to determine when limitations began to run against Mr. Durst it becomes necessary to ascertain when his former wife's hold-

ing of the policy became wrongful. In order to establish a constructive conversion, where the original holding was not tortious, it is necessary to show a demand for the return of the chattel by the rightful owner, and a refusal by the wrongful holder, or some assertion of an adversary right by the holder. *Cline v. Fountain Rock Co., Inc.,* 217 Md. 425, 143 A. 2d 496 (1958); *Maryland Lumber Co. v. White,* 205 Md. 180, 107 A. 2d 73 (1954); *Mattingly v. Mattingly,* 150 Md. 671, 133 Atl. 625 (1926). In the case of a direct conversion, the original taking is *per se* tortious and it is unnecessary to show a demand and refusal. *Mattingly v. Mattingly, supra; Stewart v. Spedden,* 5 Md. 433 (1854).

Mrs. Durst contends that the property settlement agreement entered into by the parties in 1952 established Mr. Durst's right to possession of the policy, and that her failure to deliver it constituted a conversion barring suit by him after three years. She also maintains that in any event her holding of the policy should be considered as adverse or wrongful from the time of the divorce, when, she stated, she left the marital home and took the policy with her, effecting a direct conversion. Mrs. Durst's own testimony casts some doubt on whether this taking of the policy was tortious, since she stated on the witness stand that Mr. Durst made no objection to her possession, thereby implying that he had knowledge of it. Mr. Durst maintained, on the other hand, that he did not learn she had the policy until a year later. We find it unnecessary to consider the issue thus presented, however, in view of the next chapter in the history of this dispute.

Appellant argues that even if there was no wrongful holding from the time of the property settlement and divorce in 1952, the evidence establishes an adverse holding in 1953 or, in the alternative, a demand for the policy at that time and a refusal to deliver. It was then that Mr. Durst said he discovered the policy was missing from the safety deposit box and, believing it lost, notified the insurance company. It appears from the evidence that Mr. Durst directed the local agent of the insurance company to approach Mrs. Durst either to get her to surrender the policy, if she had it, or to make

the lost policy affidavit. She refused and testified that she told the agent "* * * it belonged to me, that I had it reinstated." She based her claim to the policy on the fact that in 1950, when, according to her, the policy had lapsed because of nonpayment of a premium, she had effected reinstatement by paying the premium with her own funds. She also testified that her husband had made a gift of the policy to her immediately after he took it out. It is clear that Mr. Durst learned of her refusal to surrender the policy, his testimony being that he did not sue at that time because of assurances from his legal advisor. When asked whether she was holding the policy against his wishes he answered, "Yes, sir." He was not asked whether the insurance agent had reported to him Mrs. Durst's assertion of ownership of the policy, and the agent was not called as a witness. This would seem of no consequence in view of the fact that Mr. Durst had constituted the insurance representative as his own agent in the quest for the policy or the affidavit. It is axiomatic that knowledge acquired by an agent in the course of his agency is imputed to his principal. *Boring v. Jungers,* 222 Md. 458, 160 A. 2d 780 (1960), and cases there cited.

It is settled law in Maryland that life insurance policies are choses in action, *Ratsch v. Rengel,* 180 Md. 196, 23 A. 2d 680 (1942), and as such may be the subject of a conversion, *Shipley v. Meadowbrook Club,* 211 Md. 142, 126 A. 2d 288 (1956).

We are constrained to conclude that Mrs. Durst's assertion of ownership and refusal to surrender the policy in 1953 constituted clear evidence of an adverse claim, establishing a conversion and barring suit after three years. When possession is of a character that is hostile to and inconsistent with the absolute right of property in the owner it is enough to show an adverse holding. Brown, *Personal Property,* 2nd ed., § 17. See also 1 Wood, *Limitations,* 4th ed., § 57d. Early Maryland cases have dealt with the effect of adverse holdings of personal property and the running of limitations. In *Clarke's Adm'r v. Marriott's Adm'r,* 9 Gill 331 (1850), the Court held in an action of trover that limitations began to

run from the conversion, unless the plaintiff be prevented by fraud of the defendant from obtaining knowledge of it, and the fact that plaintiff was ignorant of the conversion will not prevent the running of the statute. In *Callis v. Tolson's Ex'rs,* 6 Gill & J. 80 (1834), limitations were said to begin running when an adversary claim was asserted by the person in possession of loaned property. And in *Ratrie v. Sanders,* 2 Harr. & J. 327 (1808), where one was in open possession of a slave owned by plaintiff with an assertion of ownership, for a period which under the law would bar an action for its recovery by the true owner, the possessor acquired good title. Cf. *Wear v. Skinner,* 46 Md. 257 (1877), and *State, use of Henderson, Ex'r v. Henderson,* 54 Md. 332 (1880), on the effect of fraud on the running of limitations, and *Fishwick v. Sewell,* 4 Harr. & J. 393 (1818), where action was not barred by the passage of over 30 years because of the finding by the Court of a "fiduciary possession".

The recent case of *Cline v. Fountain Rock Co., Inc., supra,* involved an action in replevin for scales left by the plaintiff with the corporate defendant after the parties ended their joint business venture in 1951. At the time of the parting, defendant " 'presumed' each party would 'get back what he put in.' " In 1954 the plaintiff learned that the defendant had offered to sell the scales to a third person. Suit was not initiated by plaintiff to replevy the scales, however, until 1956, five years after the ending of the business relationship. The defense was limitations but the Court held that a detention, permissive in the beginning, does not become tortious until there is a demand and refusal or until the bailee *converts the property to his own use.* Thus the Court found that limitations began to run in 1954 when defendant's attempt to sell the scales was evidence of an adverse claim. In the case before us there is clear evidence of an adverse claim amounting to a conversion. However, unlike *Cline,* action was not instituted by Mr. Durst until six years after the adversary right was asserted by his ex-wife. "Adverse possession of personal property for the period prescribed by the statute of limitations as a bar to an action for the recovery thereof gives

the party holding such possession a sufficient title to defeat an action of detinue by the former owner of the property." 26A C.J.S., *Detinue,* § 10.

Appellee maintains, however, that the question raised on this appeal is moot. His contention is that the appellant failed to stay execution of the judgment by filing a supersedeas bond as provided by Maryland Rule 817 and that accordingly the judgment was "executed" when the Clerk of the Circuit Court delivered possession of the insurance policy to the appellee four days after the order for appeal was filed. Appellant filed a supersedeas bond two days after delivery of the policy. The clerk had obtained possession of the policy at the trial when it was produced by appellant, on demand of appellee, for filing as an exhibit in the case. Appellee cites three Maryland cases in which this Court held that since a supersedeas bond was not filed, a reversal would have no effect upon the rights of the parties where judgment has been executed: *Preske v. Carroll,* 178 Md. 543, 16 A. 2d 291 (1940); *Webster v. Archer,* 176 Md. 245, 4 A. 2d 434 (1939); *Raith v. Bldg. & Loan Ass'n,* 140 Md. 542, 118 Atl. 67 (1922). Appellee urges that the question is moot since he now has acquired satisfaction of his judgment by gaining possession of the policy.

We think that on the facts of this case the contention is without merit. The cases cited by appellee involve intervening rights of innocent purchasers of real property at mortgage and judicial sales. In the case before us there are no intervening innocent parties to protect but a bona fide dispute and rights which remain to be decided. This Court, in *Lloyd v. Supervisors of Elections,* 206 Md. 36, 111 A. 2d 379 (1954), discussed the principles relating to the question of mootness and held that we will dismiss an appeal if it is beyond our power to make a decision in the case which will bind any of the parties to it or accomplish any of the purposes for which it was brought or defended. Here, the parties are still in court, and amenable to court orders in the event of a reversal. Therefore, the question involved in this case is not moot. *Maddox v. District Supply, Inc.,* 222 Md. 31, 158 A. 2d 650 (1960).

Since, as we conclude, appellee's action to recover the policy was barred by limitations three years after Mrs. Durst's assertion of an adversary right to it in 1953, appellant's motion for directed verdict or judgment N.O.V. should have been granted. However, in holding that Mrs. Durst is entitled to physical possession of the policy, we leave open all questions as to the rights of the parties in regard to the insurance contract which it evidences.

The judgment below will be reversed.

*Judgment reversed, appellee to pay the costs.*