795 A.2d 145

**CHOICE HOTELS INTERNATIONAL, INC.**

v.

**MANOR CARE OF AMERICA, INC.**

**No. 115, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

March 29, 2002.

James G. Healy, Silver Spring, for appellant.

C. Kevin Kobbe (Jodie E. Bekman and Piper, Marbury, Rudnick & Wolfe LLP on the brief), Baltimore, for appellee.

Argued Before SONNER, DEBORAH S. EYLER, ROSALYN B. BELL (retired, specially assigned), JJ.

SONNER, Judge.

This case arises from a lawsuit filed on October 4, 2000, by Choice Hotels International, Inc. ("Choice Hotels") for the return of shares of Prime Hospitality, Inc. stock ("Prime Stock"), which were in the possession of Manor Care of America, Inc. Manor Care filed a motion to dismiss, asserting that Choice Hotels' claim accrued in 1993 and therefore was barred by the statute of limitations. In its response to Manor Care's motion to dismiss, Choice Hotels filed a motion for summary judgment. Manor Care then responded with its own motion for summary judgment. On March 2, 2001, the Circuit Court for Montgomery County orally granted Manor Care's motion to dismiss and its motion for summary judgment. In announcing the court's decision, the following exchange occurred:

> THE COURT: [I]t is the Court's belief that as a matter of law, the plaintiff was on inquiry notice. And I have to say that I know these are complex deals, and I know that there are a lot of thoughts going through people's heads and the like, but when we're talking about this kind of asset and that there's an agreement that's drawn and the nature that it's drawn, I think it's very clear that everybody was on notice that that was what the deal was and they can't be heard to come back at this late date and say "Oh guess what? We were wrong and we really meant to include something that we didn't set forth in the agreement."
>
> So I think summary judgment is supportable on either of Manor's grounds; that is, statute of limitations or the summary judgment on the nature of the agreement itself. And accordingly, the motion for summary judgment will be

granted. That moots out the motion by Choice for summary judgment.

[PLAINTIFF'S] COUNSEL: Your Honor, is it the motion to dismiss or the motion for summary judgment which you're granting?

THE COURT: Well, I'm going to grant the motion to dismiss and say at the same time that the Court finds that the motion for summary judgment by Manor to be meritorious as well.

I don't want to put an extra nail in the coffin in this regard, but I do think it's important, [plaintiff's counsel], that if you intend to appeal, that you know what your burden is before you get there.

\* \* \*

THE COURT: ... Since this is a legal judgment, [plaintiff's counsel], you're no worse off. You just have three new judges, that's all.

On March 27, 2001, Choice Hotels appealed the trial court's decision dismissing its action and asks us to resolve, first, whether the trial court erred in granting Manor Care's motion to dismiss and its motion for summary judgment on statute of limitations grounds. We shall hold that the trial court erred on this issue.

Second, Choice Hotels asks us to resolve whether the trial court erred in denying its motion for summary judgment. We affirm that decision and remand the case to the Circuit Court for Montgomery County.

### Factual Background

In July 1990, Manor Care purchased all of Rodeway Inns International, Inc.'s capital stock from Prime Franchise Systems, Inc., a subsidiary of Prime Motor Inns, Inc. In September 1990, Prime Franchise filed a Chapter 11 bankruptcy petition. Manor Care filed a claim in the bankruptcy proceeding, asserting that Prime Franchise had made misrepresentations to Manor Care in connection with the sale of the

Rodeway stock. In 1993, Manor Care and Prime Franchise reached a settlement, in which Prime Franchise agreed to issue 84,073 shares of Prime Stock. The shares were issued in the name of the original claimant, Manor Care. Everett F. Casey, who, at the time, was associate general counsel and assistant secretary for both Manor Care and its subsidiary, Choice Hotels, placed the shares in a vault in the Manor Care legal department.

In November 1991, prior to this settlement, Choice Hotels purchased Manor Care's interest in Rodeway. Manor Care acknowledges in its brief that, "at that time [Choice Hotels was] the sole owner of all interest in, and 100% of the capital stock of Rodeway, and also had the right to any proceeds paid in connection with the claims." Manor Care, nevertheless, took possession of the Prime Stock. At the time, Choice Hotels was a wholly owned subsidiary of Manor Care. To divest itself of its lodging operations, Manor Care agreed to transfer its lodging business assets to Choice Hotels, pursuant to the terms of a distribution agreement dated October 31, 1996. The agreement, however, did not expressly provide for the transfer of Prime Stock to Choice Hotels. In September of 1998, Choice Hotels inquired about the status of the Prime Stock. On February 9, 1999, Manor Care advised Choice Hotels that it viewed the Prime Stock as a Manor Care asset.

### *Discussion*

### I. *Standard of Review*

A motion for summary judgment may be entered only if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Md. Rule 2–501(e). Additionally, a grant of summary judgment is appropriate if the statute of limitations governing the action has expired. *Frederick Road Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 94, 756 A.2d 963 (2000). Our review of a grant of summary judgment involves the determination of whether the trial court was legally correct in finding that no dispute as to any material fact exists. *Frederick Road,* 360 Md. at 93, 756 A.2d

963. We must consider the facts reflected in the pleadings, depositions, answers to interrogatories, and affidavits in the light most favorable to the non-moving party, here, Choice Hotels. *Ashton v. Brown,* 339 Md. 70, 79, 660 A.2d 447 (1995).

## II. *Statute of Limitations*

■ Under Maryland law, a civil action must be "filed within three years from the date it accrues." Md.Code (1973, 1998 Repl.Vol.), Cts. & Jud. Proc. § 5–101. The question of when a cause of action accrues is a judicial determination. *Harig v. Johns–Manville Prod. Corp.,* 284 Md. 70, 75, 394 A.2d 299 (1978). We have held that a cause of action accrues when all the elements of the claim are present, including damages. *Baker, Watts & Co. v. Miles & Stockbridge,* 95 Md.App. 145, 187, 620 A.2d 356 (1993).

## III. *Manor Care's Motions*

### A. Motion to Dismiss

At the outset, we note that we will review the lower court's decision to grant Manor Care's motion to dismiss under the summary judgment standard because the lower court considered matters outside the pleadings when it did not exclude the distribution agreement between Manor Care and Choice Hotels from its consideration of Manor Care's motion to dismiss. *See Hrehorovich v. Harbor Hosp. Ctr., Inc.,* 93 Md.App. 772, 782, 614 A.2d 1021 (1992); *see also* Md. Rule 2–322(c) (stating that a motion to dismiss shall be treated as one for summary judgment if matters outside the pleading are presented to, and not excluded by, the court).

■ In its motion to dismiss, Manor Care argued that Choice Hotels' claim accrued in 1993, when the Prime Stock shares were delivered to Manor Care, or, in the alternative, in 1996, when Manor Care transferred all of its lodging holdings to Choice Hotels. In ruling on this motion, the circuit court decided that, as a matter of law, Choice Hotels was on inquiry notice of its claims more than three years prior to the date on which it filed this lawsuit. Choice Hotels argues that applica-

tion of the inquiry notice standard by the trial court was "clearly at odds" with Maryland decisional law. We agree.

In Maryland, the general rule had long been that the running of limitations against a right or cause of action is triggered upon the occurrence of the alleged wrong, but the Court of Appeals enunciated an exception to that rule nearly a century ago when it held that the cause of action accrues in medical malpractice cases when the wrong is discovered or should have been discovered. *See Leonhart v. Atkinson*, 265 Md. 219, 223, 289 A.2d 1 (1972); *Hahn v. Claybrook*, 130 Md. 179, 187, 100 A. 83 (1917). In *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981), the Court explained the exception, and held that the discovery rule was applicable to **all** actions. The Court stated:

> [T]he discovery rule contemplates actual knowledge—that is express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus charging the individual] with notice of all acts which such an investigation would in all probability have disclosed if it had been properly pursued.

*Poffenberger*, 290 Md. at 637, 431 A.2d 677 (second alteration in original) (citations omitted). We believe that the determination of when a plaintiff has this knowledge is a question of fact, making a grant of summary judgment inappropriate when such facts are in dispute. *See Hicks v. Gilbert*, 135 Md.App. 394, 400, 762 A.2d 986 (2000).

Although the trial court found that Choice Hotels' claims were barred by the statute of limitations, it made no specific determination as to exactly when Choice Hotels was put on inquiry notice. The trial judge appears to have been persuaded by Manor Care's allegations that Choice Hotels was on notice as early as 1993, when the stock was transferred, or as late as 1996, when the distribution agreement was reached. The Court of Appeals, however, has held that the statute of limitations does not begin to run in replevin or detinue actions, such as the instant case, until there is a demand and refusal, or until the holder of the property converts the property to

the holder's own use. *See Cline v. Fountain Rock Lime & Brick Co., Inc.,* 217 Md. 425, 431, 143 A.2d 496 (1958); see also *Durst v. Durst,* 225 Md. 175, 181, 169 A.2d 755 (1961).

*Cline* involved Earl H. Cline's replevin action for the return of scales owned by Cline and used in the quarry business. *Durst* involved a husband's efforts to recover a life insurance policy held by his former wife. In both cases, the Court of Appeals held that the causes of action accrued when the defendants refused to return the personal property or asserted some right adverse to the plaintiffs. Under the rationale in both cases, the trial judge here was legally incorrect in finding that the cause of action accrued before Choice Hotels asked Manor Care to hand over the Prime Stock shares.

Manor Care agrees that we should find *Durst* persuasive, but it argues that we should nevertheless affirm the circuit court's decision in this case under *Durst,* because the Court "rejected the argument that a demand for turnover is required to start the running of the statute of limitations in a detinue action." The *Durst* Court did, in fact, decide that the plaintiff's case was barred by the statute of limitations, but it did so because the plaintiff did not file his claim until six years after the defendant asserted an adversary right to the plaintiff's property. *Durst,* 225 Md. at 181, 169 A.2d 755. In the instant case, Manor Care did not assert an adversary right until February 9, 1999, when, pursuant to Choice Hotel's request to transfer the Prime Stock shares, Manor Care informed Choice Hotels that it viewed the Prime Stock as the property of Manor Care.

Manor Care also argues that we should not rely on the Court of Appeals's *Cline* decision, thereby likening it to a bailee, because the Prime Stock shares, unlike the property in the *Cline* case, were not simply left in its possession pending future determination as to their disposition. While we agree that Manor Care was not an actual bailee, it may have been a constructive or involuntary bailee [1] and, as such, Manor Care

---

1. Involuntary or constructive bailments arise in situations in which one person receives lawful possession of another's property, other than by

still would have had a duty to transfer the stock to Choice Hotels. *See Schermer v. Neurath,* 54 Md. 491, 496 (1880) (recognizing the rule that a person who keeps property for the benefit of another without reward or in other words, involuntarily, is liable for wrongful conduct resulting in the loss of that property). The ownership of the stock, if not the title, therefore, should have been a question for the jury.

■ Furthermore, Choice Hotels was a wholly owned subsidiary of Manor Care when Manor Care received the Prime Stock shares. In fact, when Manor Care received the stock, both companies shared the same physical facilities and the same legal counsel. Accordingly, we refuse to limit the Court's *Cline* decision only to situations in which the property involved is subject to an actual bailment relationship, because such an interpretation of *Cline* would require that we disregard Manor Care's corporate identity as the parent corporation of Choice Hotels.[2] Instead, we hold that the lower court was legally incorrect to the extent that it held that the statute of limitations began to run before Manor Care asserted an adversary right by refusing to return the Prime Stock shares to Choice Hotels.

## B.  Motion for Summary Judgment

■ At the motions hearings, the trial judge also granted Manor Care's motion for summary judgment, on the ground that, as a matter of law, the distribution agreement between Manor Care and Choice Hotels did not provide for the transfer of Prime Stock shares. The trial judge accepted Manor Care's argument that the distribution agreement was a clear

---

virtue of a bailment contract. 8A Am.Jur.2d *Bailments* § 12 (2000). This bailment arrangement arises when personal property passes to another by mistake, accident, or when a party engages another to perform some service with respect to that person's personal property, without instructions as to the property's disposition. *Id.*

2.  The well-settled rule in Maryland is that courts will pierce the corporate veil only when necessary to prevent fraud or a paramount inequity. *Bart Arconti & Sons, Inc., v. Ames–Ennis, Inc.,* 275 Md. 295, 310, 340 A.2d 225 (1975).

and unambiguous document that constituted the entire agreement between the parties.

The trial court's decision presupposes that the Prime Stock shares were Manor Care's property to transfer to Choice Hotels in the first place. In November 1991, Choice Hotels purchased Manor Care's interest in Rodeway. In fact, Manor Care acknowledges in its brief that Choice Hotels was the sole owner of Rodeway capital stock and had a right to any proceeds paid in connection with Rodeway's bankruptcy proceedings. Choice Hotels submitted its response to Manor Care's motion with affidavits that support its contention that Choice Hotels owned the Prime Stock shares. These affidavits allege that the Prime Stock shares were the property of Choice Hotels, and that they were not transferred to Choice Hotels because of an alleged oversight. Manor Care filed no affidavits of its own, and, accordingly, shall be bound by our review of the documents in the record.

We believe that, taking the facts in a light most favorable to Choice Hotels, a reasonable trier of fact could conclude that the Prime Stock shares were the property of Choice Hotels, and, consequently, Manor Care could never have included these shares in the distribution agreement. Furthermore, the trier of fact could also reasonably accept Choice Hotels' argument that **all** of Manor Care's ownership in its lodging subsidiary was to be transferred in the distribution agreement and, therefore, there was no need to "separately specify in minute detail the assets held by that subsidiary." In any event, the trial court erred by summarily resolving this factual dispute in favor of Manor Care. Accordingly, we reverse the trial court's decision granting summary judgment in favor of Manor Care, and remand this case for a trial on the merits.

IV. *Choice Hotels' Motion for Summary Judgment*

We now turn to Choice Hotels' motion for summary judgment, in which it asserted that it was entitled to judgment as a matter of law on the issue of liability. Choice Hotels argued that the affidavits it filed, along with its motion for summary judgment, supported its position that there was no dispute as

to ownership of the Prime Stock shares, and that it was entitled to an award for possession of those shares and/or damages caused by Manor Care's wrongful detention or conversion. While Choice Hotels makes a compelling argument, it was not the trial judge's place to resolve the ownership issue on summary judgment, nor is it now our place to resolve this issue on appeal. To do so would require that we decide the very issue in dispute in this case. We therefore affirm the lower court's decision denying Choice Hotels' motion for summary judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**