

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: SILVER SANDS R.V. RESORT, Debtor. | No. 13-60025 B.A.P. No. 11-1723 |
| BAYVIEW LOAN SERVICING, LLC, Appellant, v. CWCAPITAL ASSET MANAGEMENT, LLC; G&G REAL ESTATE INVESTMENT; CHAD MESTLER; JESSICA MESTLER; STUART SCHNEIDER; JANINE SCHNEIDER; PHYLLIS GORBY KELLEY; SILVER SANDS R.V. RESORT, Appellees. | MEMORANDUM* |
| In re: SILVER SANDS R.V. RESORT, Debtor. | No. 13-60026 B.A.P. No. 11-1721 |
| G&G REAL ESTATE INVESTMENT; CHAD MESTLER; JESSICA MESTLER; STUART SCHNEIDER; JANINE | |

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

SCHNEIDER; PHYLLIS GORBY
KELLEY,

            Appellants,

 v.

CWCAPITAL ASSET MANAGEMENT,
LLC; BAYVIEW LOAN SERVICING,
LLC; SILVER SANDS R.V. RESORT,

            Appellees.

Appeals from the Ninth Circuit
Bankruptcy Appellate Panel
Pappas, Klein, and Markell, Bankruptcy Judges, Presiding

Argued and Submitted April 15, 2015
San Francisco, California

Before: KOZINSKI and GRABER, Circuit Judges, and BENSON,[**] Senior
District Judge.

Bayview Loan Servicing, LLC, and G&G Real Estate Investment, et al.,

appeal the bankruptcy court's order and the Bankruptcy Appellate Panel's ("BAP")

holding that CWCapital Asset Management, LLC, held a superior lien against

property located in Mesa, Arizona, owned by Silver Sands R.V. Resort. We

review the bankruptcy court's decision de novo. Arab Monetary Fund v. Hashim

---

[**] The Honorable Dee V. Benson, Senior United States District Judge for
the District of Utah, sitting by designation.

(In re Hashim), 213 F.3d 1169, 1171 (9th Cir. 2000). We review its findings of fact for clear error, and we review de novo questions of law, as well as mixed questions of law and fact, including whether the historical facts satisfy the relevant legal rule. Murray v. Bammer (In re Bammer), 131 F.3d 788, 791–92 (9th Cir. 1997) (en banc). We affirm in part and reverse in part.

1. The bankruptcy court properly concluded that there was no accord and satisfaction. Under Arizona law, there must be a bona fide dispute regarding the claim that is meant to be settled. Baker v. Emmerson, 734 P.2d 101, 104 (Ariz. Ct. App. 1986). Here, there was no such dispute.

2. The bankruptcy court erred in holding that no bailment relationship was created by the delivery of the check to Capmark. Although there was no express or implied bailment, there was a constructive bailment.

The party seeking to establish a constructive bailment must show that the circumstances surrounding the putative bailee's possession of personal property were sufficient to give rise to a duty to use due care in handling the property. See, e.g., Alitalia v. Arrow Trucking Co., 977 F. Supp. 973, 980 (D. Ariz. 1997); Chesterfield Sewer & Water, Inc. v. Citizens Ins. Co. of N.J., 207 N.E.2d 84, 86 (Ill. Ct. App. 1965); Hadfield v. Gilchrist, 538 S.E.2d 268, 272 (S.C. Ct. App. 2000); Aegis Investigative Grp. v. Metro. Gov't, 98 S.W.3d 159, 163 (Tenn. Ct.

App. 2002). An agreement between the putative bailor and bailee is not necessary to create a constructive bailment when a person comes into lawful possession of personal property of another and when justice so requires. But the bankruptcy court incorrectly equated the requirement of "justice" in this context with a typical balancing of equities. Instead, the inquiry is, more narrowly, whether the circumstances surrounding possession and control over the property were such that they required the putative bailee to use due care—irrespective of any negligence by the putative bailor that led to the putative bailee's possession. See, e.g., Chesterfield, 207 N.E.2d at 86 (noting that a constructive bailment arises when one lawfully acquires another's personal property "and holds it under circumstances whereby he ought, upon principles of justice, to keep it safely and restore it or deliver it to the owner" (internal quotation marks omitted)); Aegis, 98 S.W.3d at 163 (describing the same requirement); Hadfield, 538 S.E.2d at 272 (explaining that a constructive bailment arises when one lawfully acquires another's personal property "and holds it under such circumstances that the law imposes on the recipient of the property the obligation to keep it safely and redeliver it to the owner"); 8A Am. Jur. 2d Bailments § 13 (2015) (stating that a constructive bailment requires lawful possession of chattel "and the duty to account for it as the property of another").

4

Thus, a consideration of who is more blameworthy—a balancing of equities in the usual sense—is irrelevant. Rather, the question is simply whether the circumstances established a duty on the part of the Trust to use due care to safeguard the funds and to return those funds to their rightful owner. We answer "yes." Capmark deposited the check into a "suspense account," thereby taking full control of the funds (which were substantial) while simultaneously recognizing that the money was not theirs to keep. On remand, the bankruptcy court should consider in the first instance whether the duty of due care was violated.

3. The bankruptcy court did not rule on Bayview's conversion claim. Because there are factual issues to resolve the bankruptcy court should consider this claim in the first instance. See Carter v. Anderson (In re Carter), 182 F.3d 1027, 1034 (9th Cir. 1999) ("Remand is appropriate when the bankruptcy court's factual findings are silent or ambiguous as to a material factual question." (internal quotation marks omitted)).

AFFIRMED in part; REVERSED in part; REMANDED. The parties shall bear their own costs on appeal.

Bayview Loan Servicing, LLC v. CWCapital Asset Management, LLC (In re: Silver Sands R.V. Resort), Nos. 13-60025, 13-60026

Judge BENSON, concurring in part and dissenting in part.

I agree with the majority that the bankruptcy court correctly concluded there was no accord and satisfaction in this case and that a remand is necessary for the bankruptcy court to consider Bayview's conversion claim. I respectfully dissent from the Court's finding that Capmark and the Trust are potentially liable to Bayview on a theory of constructive bailment. I agree with the majority that the bankruptcy court and the BAP misinterpreted the definition and application of constructive bailment law. However, I would affirm the bankruptcy court on the grounds that Capmark and the Trust acted reasonably under the circumstances. In re Slatkin, 525 F.3d 805, 811 (9th Cir. 2008) (noting that this Court may affirm the bankruptcy court's judgment on "any ground supported by the record, even if it differs from the reasoning of the bankruptcy court").

A constructive bailment may arise as an operation of law "where a person comes into lawful possession of the personal property of another, even though there is no formal agreement between the property's owner and its possessor . . . when justice so requires." Atalia v. Arrow Trucking Co., 977 F. Supp. 973, 980–81 (D. Ariz. 1997) (quoting Christensen v. Hoover, 643 P.2d 525, 529 (Colo. 1982)). A constructive bailment may even be imposed where delivery of the bailed

property to the bailee occurs by mistake or accident. <u>Choice Hotels Int'l, Inc. v. Manor Care of Am., Inc.</u>, 795 A.2d 145, 149 (Md. Ct. Spec. App. 2002); <u>Armored Car Serv., Inc. v. First Nat'l Bank of Miami</u>, 114 So. 2d 431, 434 (Fla. Dist. Ct. App. 1959). However, a constructive bailment does not arise in every circumstance where property is negligently delivered to an unsuspecting party. Many jurisdictions have limited the imposition of a constructive bailment to circumstances where "justice so requires." <u>See, e.g.</u>, <u>Atalia</u>, 977 F. Supp. at 980 (applying Arizona law); <u>Christensen v. Hoover</u>, 643 P.2d 525, 528–29 (Colo. 1982); <u>Khan v. Heritage Prop. Mgmt.</u>, 584 N.W.2d 725, 729–30 (Iowa Ct. App. 1998); 8 C.J.S. Bailments § 14 (2005). Similarly, many jurisdictions limit constructive bailments to circumstances where "principles of justice" require the court to impose a constructive bailment. <u>See, e.g.</u>, <u>Hoblyn v. Johnson</u>, 55 P.3d 1219, 1229 (Wyo. 2002); <u>Loomis v. Imperial Motors, Inc.</u>, 396 P.2d 467, 469 (Idaho 1964); <u>Aegis Investigative Grp. v. Metro. Gov't of Nashville & Davidson Cty.</u>, 98 S.W.3d 159, 163 (Tenn. Ct. App. 2002); <u>Am. Ambassador Cas. Co. v. City of Chicago</u>, 563 N.E.2d 882, 885 (Ill. App. 1990); 8A Am. Jur. 2d Bailments § 12 (2009); 8 C.J.S. Bailments § 14 (2005).

The BAP interpreted the "justice so requires" limitation to require the Court to weigh the relative equities between the parties before imposing a constructive

2

bailment. In my view, which is consistent with the majority, the "justice so requires" limitation does not refer to equity. Rather, the "justice so requires" limitation asks the Court to review the circumstances surrounding the putative bailee's possession of bailed property to determine if justice demands imposing a duty on the bailee to exercise due care in handling the property. See Alitalia, 977 F. Supp. at 980; Aegis Investigative Grp, 98 S.W.3d at 160 ("In the case of a constructive bailment it is not necessary that there be either an actual or a constructive delivery . . . . The lawful possession of the chattel and the duty to account for it as the property of another is sufficient." (citations omitted)); 8A Am. Jur. 2d Bailments § 12 (2009). Therefore, the Court's focus should be on Capmark's possession of Bayview's funds, not Bayview's recklessness.

The facts and circumstances surrounding Capmark's possession of the Transnation check and its proceeds support a finding of a constructive bailment relationship between Capmark, the Trust, and Bayview. Indeed, when a lender receives a check by accident or mistake, justice requires that lender act reasonably when negotiating the check. Capmark and the Trust acted reasonably; therefore, Capmark and the Trust are not liable to Bayview for the misdelivery of Bayview's funds. See Surety Bank v. Dunbar Armord, Inc., No. 14-81368, 2015 WL 845590, at *6 (S.D. Fla. Feb. 25, 2015) (noting, "if possession of one's personal property

3

passes to another by mistake, the resulting bailment is considered constructive and gratuitous; in this situation, the bailee is liable only for gross negligence" (citing cases)); <u>Montano v. Land Title Guarantee Co.</u>, 778 P.2d 328, 331 (Colo. Ct. App. 1989) (noting, after imposing a constructive bailment, "a conversion results where . . . court finds misdelivery of the bailed property is due to negligence"); <u>Shamrock Hilton Hotel v. Caranas</u>, 488 S.W.2d 151, 154 (Tex. Civ. App. 1972).[1]

Capmark received a check from Transnation that did not include an instruction letter informing Capmark of the source of the funds or the purpose for which the funds were sent. Capmark and the Trust concluded that the Transnation check was an attempt by SSRV to repay the Trust Loan. Capmark contacted the party it had a relationship with, SSRV, and notified SSRV that pursuant to the Trust Loan Documents, the Trust Loan could not be repaid at that time. Capmark reasonably assumed that SSRV was the owner of the funds because the funds were placed in escrow according to SSRV's instructions. <u>See, e.g.</u>, <u>In re Algire</u>, 430 B.R. 817, 822 (Bankr. S.D. Ohio 2010) (noting, "at the time [the lender] funded the loan, the loan proceeds ceased being [the lender's] property; rather, at that moment, the loan proceeds become [the borrower's] property"); <u>In re Bangle</u>, No. 10-5010, 2010 WL 1903752, at *3 (Bankr. N.D. Tex. May 10, 2010). Therefore,

---

[1] Whether the standard is negligence or gross negligence, the result is the same in this case.

4

Capmark applied the funds according to SSRV's wishes. Capmark and the Trust, like Bayview, were unaware of Gregg's fraudulent actions. While it may have been more prudent for Capmark to contact Transnation to investigate the source of the Transnation check, I cannot conclude that Capmark or the Trust acted unreasonably.

In short, I would affirm the bankruptcy court's ruling. While Capmark and the Trust did not take every conceivable step to accurately negotiate the Transnation check, Capmark and the Trust acted reasonably.

However, if equitable principles could be considered before imposing a constructive bailment, the BAP correctly found that equities in this case tip starkly in favor of Capmark. A constructive bailment should not serve as a safety net to a lender who, like Bayview, threw caution to the wind and delivered $1.1 million to Capmark under such dubious circumstances. Bayview and Transnation did not complete minimal due diligence. Bayview and Transnation failed to review the publically available Trust Loan Documents that would have informed them that the Trust Loan could not be prepaid prior to August 2011. Bayview and Transnation did not send an instruction letter informing Capmark of the source and purpose of the Transnation check. Bayview and Transnation failed to verify the second phony payoff statement and instead chose to lend over $1.1 million on Gregg's word.

Out of an abundance of caution Capmark should have contacted Transnation.  But, Capmark's inaction should not rescue Bayview from its own recklessness.