FOUR RIVERS FARMS, INC. ET AL. *v.* STATE ROADS COMMISSION OF MARYLAND ET AL.

[No. 98, September Term, 1962.]

272

*Decided December 14, 1962.*

*Motions for rehearing filed January 10 and 14, 1963, denied January 16, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ.

*Nicholas J. Fotos,* and submitted on the brief by *Robert E. Funkhouser,* in proper person, for Robert E. Funkhouser, for appellants.

*William D. Macmillan, Jr.,* with whom were *Thomas B. Finan, Attorney General,* and *Joseph D. Buscher, Assistant Attorney General* on the brief, for State Roads Commission of Maryland, part of appellees.

*Eugene M. Childs,* with whom were *Childs & Bald,* on the brief for Henry Doepkens, other appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Anne Arundel County, which dismissed appellants' bill of complaint and dissolved a temporary restraining order, which had been issued against the State Roads Commission (Commission) and Henry Doepkens, restraining the Commission from delivering to the said Doepkens a deed from it to him for 29.78 acres of land.

The questions presented will be considered under the following headings: (1) Should the appeal be dismissed?; (2) Do the appellants, or either of them, have legal standing to

attack *ultra vires* or illegal acts of the Commission?; (3) Were the actions of the Commission in agreeing to convey title to the 29.78 acre tract of land to Doepkens *ultra vires,* or illegal?; (4) Did the Board of Public Works (Board) give its consent and approval to the Commission's decision to dispose of the tract in question, and conclude that the consideration received therefor by the Commission was adequate?; and (5) Did the Commission act in an arbitrary and capricious manner, so as to cause injury to "appellants' rights and property"?

In acquiring rights-of-way for the John Hanson Highway, the Commission obtained, by purchase, the tract of land here involved (sometimes hereafter referred to as "the tract") in 1949. It was over and above the then road construction requirements, but was purchased by the Commission due to the fact that it would become landlocked after the construction of the new highway. The corporate appellant acquired property contiguous to the tract in 1956. The appellant, Funkhouser, is the treasurer and principal stockholder of the corporation, and claims to be a property owner and taxpayer as an individual. The appellee, Doepkens, is also the owner of property contiguous to the tract.

In January, 1959, the Commission announced that an interchange would be erected connecting the John Hanson Highway with Route 424, and instructed its right-of-way agents to begin obtaining the necessary land for its construction. The tract was not far distant from the proposed interchange, and both the appellee, Doepkens, and the Corporate appellant owned land that would be needed for the construction of the interchange. The appellant, Funkhouser, offered to exchange 1.59 acres of the corporate appellant's land for the tract. The Commission informed Funkhouser that this was not acceptable, as it did not consider this a fair exchange. The Commission offered $500 for the 1.59 acres. In the meantime, another right-of-way agent of the Commission was negotiating with the appellee Doepkens for some 6.43 acres of his land, which fronted on Route 424 and also was needed for the construction of the interchange. The Commission's appraisal of

this parcel ranged from $2,225, based upon an outside appraisal, to $4,006 as the Commission's own estimate. After several meetings wherein the parties were unable to agree upon a cash price, Doepkens offered to exchange his 6.43 acre parcel for the 29.78 acre, landlocked tract owned by the Commission. After considering this offer, the Commission decided to accept it, and thereafter approved an option agreement to this effect. Included in the option was a provision that if the Commission acquired 11.93 acres from the "Wagner property," Doepkens was given the first right to purchase this 11.93 acres, which adjoined one of his farms. This acreage was over and above the Commission's requirements for road construction, and it, too, was landlocked. Doepkens was to pay cash for this parcel, the purchase price being the "after value price per acre." The deed conveying the 29.78 acre tract to Doepkens was prepared and executed by the Commission and the Board of Public Works. Before it was delivered to the grantee, this suit was instituted, and a temporary restraining order was issued enjoining the Commission from delivering it to Doepkens. After hearing below, the restraining order was dissolved and the appellants' bill of complaint was dismissed. This appeal followed.

I

The appellees filed a motion to dismiss the appeal on the ground that the questions involved have become moot. They argue that since no supersedeas bond was filed pursuant to Maryland Rule 817 a the Commission delivered the deed to appellee Doepkens, and the delivery rendered the questions raised in this appeal academic. We do not agree. In *Durst v. Durst,* 225 Md. 175, 169 A. 2d 755, Judge Sybert, for the Court, said: "In the case before us there are no intervening innocent parties to protect but a bona fide dispute and rights which remain to be decided. * * * we will dismiss an appeal if it is beyond our power to make a decision in the case which will bind any of the parties to it or accomplish any of the purposes for which it was brought or defended. Here, the parties are still in court, and amenable to court orders in the event of a reversal. Therefore, the question involved in this

case is not moot." We think that case and the cases therein cited are controlling here; consequently the motion to dismiss will be denied.

## II

The appellees contend that the appellants failed to show any legal standing as taxpayers and property owners in this State to challenge the actions of the Commission. The appellants reply by stating that they alleged in their bill of complaint that they were taxpayers and property owners, and the appellees admitted, at least insofar as the corporate appellant is concerned, this to be true in their answers. For the purposes of the case, we shall assume, without deciding, that appellants had legal standing to institute the proceedings.

## III

There are two aspects to appellants' claim under this heading. First, the Code (1957), Article 89B, Section 6, states:

"Whenever the State Roads Commission shall determine that any land * * * acquired * * * in connection with the State's system of roads * * * is not necessary or desirable in the maintenance of said system of roads and highways * * * the State Roads Commission with the consent and approval of the Board of Public Works, shall be vested with full power and authority to dispose of such land * * *."

By virtue of this statute, the appellants contend "that before the conveyance [to Doepkens] could legally be made, the State Roads Commission must *first determine* [italics ours] that the land is not necessary or desirable in the maintenance of the road system of the state." The Commission concedes that it was proceeding under the authority of Section 6 and it was necessary for the Commission to determine that the land conveyed was no longer necessary or desirable for the requirements of the road system, but asserts that it made such a determination. It will be noted that the statute does not prescribe the mode by which the "determination" shall be made. After conceding that it was acting pursuant to Section 6, we think it would have been difficult for the Commission to have

made a clearer manifestation of a determination that the tract was no longer necessary or desirable for road-system purposes than it did when it signed the option agreement with Doepkens, and thereafter executed, subject to the approval of the Board of Public Works, a deed conveying the land to him. This is a short but complete answer, we think, to this contention of the appellants.

Second, the appellants lay great emphasis upon a "Policy Memorandum 21.2-1" dated November 4, 1959, and approved by the Chairman-Director of the Commission on November 10, 1959. This memorandum dealt with the policy of the Commission in disposing of "real estate excess to the needs" of the Commission. The appellants assert that the Commission, in disposing of the property herein involved, failed to comply with certain of the procedures outlined in the memorandum, and such failure rendered the Commission's attempted conveyance to Doepkens illegal. If we assume that the failure on the part of the Commission to carry out, after its adoption, the procedures set forth in its policy would render its actions illegal (a matter that we are not required to determine at this time), it avails appellants nothing. The option contract was signed by Doepkens on October 28, 1959; the memorandum was not approved until November 10, 1959. The policy memorandum was clearly prospective in nature, and was not aimed at controlling disposals of land already made, or in the process of being made. Hence, the transaction between Doepkens and the Commission was not within the purview of the memorandum; and the relatively unimportant matters subsequently negotiated between the Commission and Doepkens, such as a small change in the description of the property whereby the Commission retained sufficient land for a spur, did not require a reopening of the entire transaction and a following of the procedure set forth in the memorandum.

IV

Section 6, above quoted, permits the disposal of land by the Commission "with the consent and approval of the Board of Public Works." Appellants contend that the Board never gave its consent and approval to dispose of the tract herein involved,

and, apparently predicates this contention upon an assumption that the "consent and approval" of the Board must have been sought and obtained before the option agreement was executed.

Much of what we said under II above is also applicable here. We are not, of course, determining the binding effect, *vel non,* of the option agreement (or of any other contract made by the Commission for the sale of land, without the consent and approval of the Board). We are called upon to decide whether the Board gave its consent and approval to the Commission's disposition of the tract here involved. The statute does not designate any specific time when the approval shall be given, or the manner in which it shall be evinced. It does state that deeds for property disposed of thereunder shall be executed by "the Chairman of the State Roads Commission and the Board of Public Works." In the case at bar, the minutes of the Board clearly show that the Board consented to the disposal of the tract here in question, and, in addition, the Board has executed the deed to Doepkens, which is another clear manifestation of its consent and approval. We hold that the action of the Board as disclosed by the record in this case was sufficient to establish that it had consented to, and approved of, the transfer involved herein.

Code (1957), Article 78A, Section 15, provides that real property belonging to the State may be disposed of "for a consideration adequate in the opinion of the Board of Public Works." The deed conveying the 29.78 acre tract from the Commission to Doepkens was sent to the members of the Board, together with an explanatory letter relating to the exchange of this tract for the 6.83 acre parcel belonging to Doepkens, but no mention was made concerning the provision in the option relative to Doepkens' having first refusal of the purchase of the 11.93 acre parcel, if it were obtained from the Wagner property. The appellants argue that this first right to purchase said property was part of the consideration for the entire option agreement; hence the Board failed to pass upon the adequacy of the consideration received for the 29.78 acre tract.

A set of facts may be assumed wherein it would be conceivable that the consideration received for one of two parcels of land involved in an option would be so inadequate as to affect, substantially, the consideration received for the other parcel, but, under the circumstances of the instant case, the contention may be disposed of under the maxim of *De minimis non curat lex*. At the time the deed was sent to the Board for its approval, the transaction between the owner of the Wagner property and the Commission had not been consummated. Although it probably would have been better for the explanatory letter to the Board to have recited both transactions involved in the option, the Commission, apparently, treated the two parcels involved upon individual bases, but by so doing we are unable to say that the State lost anything thereby. The 11.93 acre Wagner parcel was actually acquired and the after value price was set at $50 per acre, the same figure that the Commission paid for it. There is nothing in the record to show that this parcel was worth more than the Commission received for it. The appellants can not be very serious, we think, in urging that the State has lost anything of substantial value by granting a person the first right to purchase a small landlocked parcel of land at the appraised value set by the Commission.

## V

This brings us to the final complaint of the appellants. They urge that the Commission acted in an arbitrary and capricious manner by "not inviting the appellant corporation to bid for the 29.78 acre tract." As early as 1956, Funkhouser let the Commission know that the corporate appellant was interested in obtaining the tract. The Commission advised him that it was not available for purchase at that time, but it would place his name in the file and "at such time as this property is offered for sale, [he would] be notified." Much correspondence and numerous negotiations between Funkhouser and officials and employees of the Commission followed. It would serve no useful purpose to set them forth in detail. The appellants argue that it was arbitrary and capricious conduct on the part of the Commission when it exchanged the tract for Doepkens'

6.43 acres without inviting the appellant corporation "to bid" on it. We know of no law or regulation that required this procedure, and, after a careful examination of the record, we are unable to discover where the Commission acted arbitrarily or capriciously. The Commission merely followed its customary procedure of exchanging property not needed for road construction purposes for land that was needed therefor. The values of the properties exchanged show the bargain to have been a fair one for both parties. The 6.43 acre parcel fronted on Route 424; the 29.78 tract was landlocked. Prior to the exchange with Doepkens, the Commission had negotiated with Funkhouser, and the parties were unable to arrive at a mutually satisfactory bargain. We have been unable to discover anything that discloses arbitrary or whimsical conduct on the part of the Commission.

*Motion to dismiss denied. Decree affirmed, with costs.*